Argued and submitted May 9, reversed and remanded for a new trial
August 20, 1997

## Arleen E. WADDILL,
*Respondent,*

*v.*

## ANCHOR HOCKING, INC.,
a Delaware corporation,
*Appellant.*

(9405-03390; CA A91012)

944 P2d 957

Robert H. Riley argued the cause for appellant. With him on the briefs were Catherine Masters Epstein, Neil Lloyd, Schiff Hardin & Waite, Stephen S. Walters and Stoel Rives LLP.

Kathryn H. Clarke argued the cause for respondent. With her on the brief was D. Lawrence Wobbrock.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

In 1994, plaintiff filed this action alleging claims for personal injury sounding in strict liability and negligence. After trial to a jury, plaintiff was awarded economic, non-economic and punitive damages. Defendant appeals and assigns error to the admission of certain evidence at trial, to the denial of its motion for a directed verdict on punitive damages, ORCP 60, to the denial of its post-trial motions to reduce the award of punitive damages, to the giving of a jury instruction and to the trial court's denial of its post-trial motion to dismiss for failure to state ultimate facts sufficient to constitute a claim. ORCP 21 A(8). We reverse and remand.

We state the facts in the light most favorable to plaintiff. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). Plaintiff purchased a two-gallon glass fishbowl manufactured by defendant. There is no evidence that the product was defective when manufactured. Because of normal use after purchase, the fishbowl developed a small crack that could not be seen easily. After use for several months, plaintiff cleaned the fishbowl, filled it with water and carried it, cradled in both hands, to place it on a table. As she lowered the fishbowl, it shattered before it came into contact with the table. The broken glass injured plaintiff's hands and wrists.

As a result of her injuries, plaintiff filed this action. Over defendant's pretrial motion *in limine* to exclude evidence, the trial court admitted evidence about three previous complaints that had been filed against defendant involving shattered fishbowls and personal injuries to hands and wrists. At the conclusion of the trial, plaintiff moved to amend her complaint to conform to the evidence that defendant had been negligent in the manner in which it maintained records of the three prior complaints. The trial court allowed the motion over defendant's objection, and the following specification of negligence was added to the complaint: "[D]efendant was negligent * * * [i]n failing to keep records of prior lawsuits for personal injury due to breakage of the fishbowl." The jury returned a general verdict finding defendant liable for plaintiff's injuries.

After trial, defendant moved to dismiss pursuant to ORCP 21 A(8) on the grounds that

> "plaintiff's primary theory—that [defendant] failed to warn that its fishbowls could break unexpectedly—fails to state a claim either in strict liability or in negligence. The additional theory added at the close of trial—that [defendant] was negligent 'in failing to keep records of prior lawsuits'— likewise fails to state a claim of actionable negligence toward plaintiff."

The trial court denied the motion to dismiss.

■　　First, we address defendant's assignment of error with respect to the admissibility of the prior lawsuit evidence, because that evidence plays a prominent role in the remainder of our discussion.[1] Defendant argues on appeal that the trial court erred when it denied its motion to exclude and admitted evidence of the prior occurrences during the trial because plaintiff did not establish that the prior occurrences were substantially similar to the events causing plaintiff's injuries. In *Lakin v. Senco Products*, 144 Or App 52, 61, 925 P2d 107 (1996), *rev allowed* 325 Or 438 (1997), we said:

> "Although evidence of prior similar circumstances is not admissible to prove a specific act of negligence, such evidence is admissible
>
> > " 'to prove * * * that the defendant *had notice of its dangerous character*. The admissibility of such evidence for these purposes is, however, subject to the requirement that the prior accidents must have occurred under similar circumstances.
> >
> > "* * * * *
> >
> > " '*Only substantial similarity, not complete identity of circumstances, is required*. What elements must be similar will depend, of course, on the nature of the allegedly dangerous condition in each case.' " (Quoting *Rader v. Gibbons and Reed Company*, 261 Or 354, 359-60, 494 P2d 412 (1972) (citation omitted; emphasis supplied)).

---

[1] Our discussion is also intended to provide guidance to the trial court on remand because it appears that the issue of the admissibility of the evidence of previous claims against defendant will arise again.

Trial courts have broad discretion in determining whether "substantial similarity" of prior occurrences exists and, therefore, we review the trial court's decision in admitting the evidence for abuse of discretion. *Davis v. Homasote Co.*, 281 Or 383, 387-88, 574 P2d 1116 (1978).

At the pretrial hearing on defendant's motion to exclude, plaintiff made an offer of proof describing the evidence regarding two of the prior occurrences. In the first case, her counsel represented that the injured plaintiff would testify that she was

> "carrying the fishbowl just like I showed you [plaintiff] was carrying it, walking across the room, in the middle of the room, not near any surface, carrying it over to place it on a surface—but in this case I think being at least ten feet away—having the fishbowl full of water, relative to the same amount and having it, in her words, explode, resulting in serious cuts and injuries to her hands."

In the second case, plaintiff indicated that she intended to offer the deposition of the plaintiff in a case from Tennessee. Counsel represented that the deposition testimony would say:

> "Again, she's carrying the bowl across the room, it's an Anchor Hocking bowl, she purchased it, she kept fish in it, she had just cleaned it and was carrying it back, was in the middle of the room, and she describes it as exploding, the words 'explode' are in her complaint."

■ Defendant argues here, as it did before the trial court, that the prior accidents are not substantially similar because they were more than ten years old at the time of the hearing in this case and that none of the allegations made by the complainants was litigated to a conclusion in their favor. We hold that those arguments raise issues about the weight of the evidence and not its admissibility, assuming that there is evidence that the manufacture of the fishbowls by defendant and the particular uses were substantially similar to the manufacture and use of the fishbowl in this case.

Defendant also argues that the prior complaints were about manufacturing defects and that plaintiff does not

contend that there was a manufacturing defect in her fish-bowl.[2] Therefore, defendant asserts, it could not be charged with knowledge in plaintiff's case that her fishbowl could break because plaintiff does not claim that her fishbowl had a manufacturing defect. Defendant's argument is not well taken. The focus of the inquiry is not on the legal theories of liability made by the complainants as a result of the prior occurrences. Rather, it is on the substantial similarity of those events to what happened to plaintiff. Here, the triers of fact could find that the plaintiff sustained physical injuries under almost identical circumstances to those circumstances that caused injuries to the other complainants. Based on the record before it and the objections made by defendant at that time, the trial court did not abuse its discretion in denying defendant's pretrial motion. Defendant's other arguments with respect to the prior occurrence evidence do not warrant discussion.

Next, we address defendant's contention that plaintiff failed to state facts sufficient to state a claim in her pleadings for failure to warn about a dangerous product. Under the first count of her claim for relief, which she labels "Products Liability," plaintiff alleges:

"The 'fishbowl' received by plaintiff * * * was dangerously defective in that:

"(a)    It was unsafe for its intended use because it shattered explosively when used in its intended manner; and

"(b)    Did not contain adequate instructions or warnings regarding its propensity to shatter explosively under normal and expected use, or the need to inspect the bowl for defects or fractures."

With respect to her claim based on "Negligence," plaintiff's complaint alleges:

---

[2] The arguments of the parties presented conflicting views on those issues to the trial court. Defendant urged that the prior complaints were based on defects in the manufacturing process that were not alleged to be present in plaintiff's fishbowl. Plaintiff disagreed with that assertion. It was within the trial court's discretion to permit the jury to determine whether defendant's position was credible and whether the prior occurrences served to put defendant on notice as to the risk of danger arising from plaintiff's particular use.

"5.

"Defendant knew or should have known because of prior complaints that this product had failed in this manner in the past causing injury and damage to other users of the product.

"* * * * *

"11.

"In manufacturing the 'fishbowl' received by plaintiff * * *, the defendant was negligent in one or more of the following particulars:

"(a) In failing to provide instructions or warnings regarding the propensity of the fishbowl to shatter * * *."

Because defendant did not move to dismiss the complaint under ORCP 21 A(8) until after the close of all of the evidence,

"we do not restrict our review to the allegations of the complaint; rather we also consider any evidence at trial that would support amending the complaint to include elements of the plaintiff's cause of action that may be missing from the pleadings." *Boers v. Payline Systems, Inc.*, 141 Or App 238, 241, 918 P2d 432 (1996).

Plaintiff's theory is that her fishbowl, manufactured by defendant, shattered because of a particular use of the product, a use that created a danger that defendant should have warned her about. Had she been warned not to carry the fishbowl while it was full of water, plaintiff asserts that her injuries would have been prevented. At trial, an expert witness for plaintiff, who examined the shattered fishbowl, testified that he discovered a small crack in the remains of plaintiff's fishbowl that he believed was the cause of her injuries. He further testified:

"Q. * * * [W]ere you able to determine the mechanism of what most likely happened here as plaintiff described this fishbowl as exploding in her hands as she was carrying it and not having bumped it or hit it against any surface or anything like that? Were you able, in conjunction with those facts, to determine what most likely happened here?

"A. Well, the final failure apparently occurred unexpectedly simply as the fishbowl was being held.

"Now, when glass shatters or when it disintegrates suddenly, its because you have a combination of a crack of some crit—-we call it a critical size crack— for the load that's being applied, and what I believe happened was that the fracture origin is, the impact point was a very, was a small crack, probably not easily seen, and that crack would grow under the load of and presence of water, and the load of water, that crack grew as the fishbowl was being carried to what is called a critical size, and that's the point where it starts to run catastrophically.

"And so when it reached that size, that period of going from very small size to a critical size, its called slow crack growth, when it reaches a critical size, then it runs catastrophically branching and the thing falls to pieces."

A second expert witness for plaintiff testified:

"Q. How does dynamic force and static force as in carrying water in a fishbowl fit into dynamic or static force? How does that relate to the failure?

"A. Dynamic force is—-well, static force is, are forces that are stationary, that are in equilibrium where there's no moving being induced by motion, and dynamic forces are those which are the result of movement or which cause movement.

"In this case, walking with the fishbowl, every time you take a step, you exert a little vertical momentum and horizontal momentum which increases the effective pressure on the inside of the glass. That's a dynamic force.

"When you lower the bowl that was being carried, when you hold, you're holding the bowl with your hands like this, you are pressing inward to develop enough friction between your hands and the surface of the glass to support the weight so you've got a force inward while you're carrying it.

"When you lower the bowl and stop it, you cause a momentary jump in pressure. It's not a large increase but there is a surge of dynamic force, if you please, that's caused by arresting its downward motion.

"And it was at that time that little bit, which is probably the trigger that, together with the stresses induced by the

internal pressure and the pressure of the hands, that precipitated the catastrophic crack."

For purposes of its motion against plaintiff's pleadings, defendant does not distinguish between plaintiff's allegations of failure to warn under her strict liability and negligence theories. Nonetheless, we will address them separately because the theories have different elements. The elements for a strict liability action based on the sale of a product are established by ORS 30.920(1) and (2).[3] ORS 30.920(3) provides that the rule stated in subsection (1) and (2) "shall be construed in accordance with the *Restatement (Second) of Torts* sec. 402A, Comments *a* to *m* (1965)." Pertinent to a product liability action for the failure to warn of a danger from the use of a product, Comment *h* provides:

"A product is not in a defective condition when it is safe for normal handling * * *. If the injury results from abnormal handling * * * the seller is not liable. Where, however, [the seller] has reason to anticipate that *danger may result from a particular use,* * * * he may be required to give adequate warning of the danger (see comment j), and a product

---

[3] ORS 30.920 provides:

"(1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:

"(a) The seller or lessor is engaged in the business of selling or leasing such a product; and

"(b) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.

"(2) The rule stated in subsection (1) of this section shall apply, even though:

"(a) The seller or lessor has exercised all possible care in the preparation and sale or lease of the product; and

"(b) The user, consumer or injured party has not purchased or leased the product from or entered into any contractual relations with the seller or lessor.

"(3) It is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments *a* to *m* (1965). All references in these comments to sale, sell, selling or seller shall be construed to include lease, leases, leasing and lessor.

"(4) Nothing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence or under ORS 72.1010 to 72.7250."

sold without such a warning is in a defective condition." (Emphasis supplied.)

Defendant argues that plaintiff's failure-to-warn claims fail to state facts sufficient to constitute a claim in the same way that we held that the plaintiff's complaint was deficient in *Smith v. Fred Meyer*, 70 Or App 30, 32-33, 687 P2d 1128 (1984). In that products liability case, the plaintiff was injured when a mirrored wall tile fell and struck him in the face. The plaintiff alleged:

"That the adhesive mounting tape as manufactured, designed and sold for use in mounting the described glass mirrors to a wall was unreasonably dangerous and defective causing unnecessary danger to plaintiff in that:

"(1)   It did not keep and maintain the glass mirror tiles securely attached to plaintiff's bedroom wall as would be contemplated by the ordinary purchaser or consumer, more particularly plaintiff;

"(2)   It was sold by defendant without warning to the purchaser, more particularly plaintiff, that it would not securely hold the glass tiles to a wall." *Smith*, 70 Or App at 32.

In *Smith*, the defendant moved to strike subparagraph (2) of the pleading because "it merely restated the allegations of subparagraph (1) and that it failed to state a claim for failure to warn." *Id.* The trial court granted the motion, and the case was tried and submitted to the jury on the allegation in subparagraph (1). The jury returned a verdict in favor of the defendant. The plaintiff appealed, assigning error to the granting of the motion to strike subparagraph (2) of the complaint. We said:

"We read [subparagraph (2)] to allege that defendants were required to warn users that their product, even if used properly, contained an inherent defect, making it unsuitable for its intended use. If a product is unsuitable for its intended use, and as a result is unreasonably dangerous, then the correct inquiry is whether there is a manufacturing or design defect, not whether the manufacturer should have warned of the defect. If the tiles fell off the wall because of a defect, then liability would be predicated on the defect as alleged in subparagraph (1), not on a failure to warn of the defect." *Id.* at 33.

Defendant argues that:

"The present case is just like *Smith*. The plaintiff claimed that [defendant's] fishbowls may break unexpectedly, even if used properly. * * * Where the alleged problem is that the bowls break unexpectedly due to cracks one cannot see, a warning that they may do so would not prevent the danger."

The gravamen of our holding in *Smith* is that the complaint alleged that the adhesive mounting tape for the tiles was defective in that it was inadequate to secure the tiles to the wall. It was the plaintiff's theory that the defect made the tiles unstable for their intended use and unreasonably dangerous. The theory of liability was predicated on the defect in the adhesive and not on the failure to warn, because a warning could not have rendered the tiles safe for their intended use.

■     In contrast, reading the complaint in this case as amended to conform to the evidence, plaintiff has stated a claim for failure to warn under *Restatement (Second) of Torts* § 402A, *comment h* (1965). Here, the complaint alleges that defendant had reason to anticipate that danger could result only *from a particular use*, *i.e.*, the carrying of the fishbowl while filled with water, and that the fishbowl was unreasonably dangerous when sold without a warning about what could occur as the result of that particular use. In other words, a warning about the dangers of the water sloshing against the sides of the fishbowl while being carried could prevent the risk of harm arising from the internal pressure of the water in that it could have resulted in plaintiff not engaging in that particular use. In that light, we disagree with defendant's argument that liability in this case could be predicated only on a defect in the product when manufactured and not on the failure to warn. The trial court did not err by denying defendant's motion to dismiss plaintiff's strict liability claim.

Next, we address defendant's assignment of error concerning the denial of its ORCP 21 A(8) motion to dismiss plaintiff's claim that defendant was negligent in failing to warn her about the fishbowl's propensity to shatter. The elements of a common-law negligent failure-to-warn claim differ from those of a product liability claim. According to *Fazzolari*

*v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987):

> *"[U]nless the parties invoke a status*, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to the protected interest of the kind of harm that befell the plaintiff." (Emphasis supplied.)

In *Hoyt v. Vitek*, 134 Or App 271, 287, 894 P2d 1225 (1995), we held that the duty owed by one whose status is that of a supplier of products is defined by *Restatement (Second) of Torts* § 388 (1965). It provides, in pertinent part:

> "One who supplies * * * a chattel for another to use is subject to liability * * * for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> "(a)   knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> "* * * * *
>
> "(c)   fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

Thus, our holding in *Hoyt* stands for the proposition that the liability of a supplier of products is not governed by the general foreseeability standard of *Fazzolari*.

■      In order to state a claim in negligence based on plaintiff's theory of the case, she must plead that defendant knew or should have known of the danger of using the fishbowl in the particular manner alleged here. Plaintiff alleges that "defendant knew or should have known [of the danger] because of prior complaints that this product had failed in this manner in the past causing injury and damage to other users of the product." Nonetheless, defendant argues that the harm from the alleged defect could not be remedied by a warning. We disagree with that argument. Because a warning about the dangers of the particular use involved in this case could have prevented that use and plaintiff's resulting

injuries, the trial court did not err by denying defendant's motion to dismiss plaintiff's negligent failure-to-warn claim on that ground.

Also, defendant assigns error to the denial of its ORCP 21 A(8) post-trial motion to dismiss plaintiff's "negligent record-keeping" claim. At the conclusion of the trial, plaintiff moved to amend her complaint to conform to evidence involving the manner in which defendant kept records of past lawsuits. Defendant objected on the ground that the proposed allegation "is not a specification of negligence." The trial court granted her motion and the italicized language below was added to the complaint under the heading of negligence:

> "In manufacturing the 'fishbowl' received by plaintiff * * *, the defendant was negligent in one or more of the following particulars:
>
> "(a)  In failing to provide instructions or warnings regarding the propensity of the fishbowl to shatter; *and*
>
> "*In failing to keep records of prior lawsuits for personal injury due to breakage of the fishbowl.*"[4]

Defendant argues that the

> "failure to possess records of other lawsuits [involving similar occurrences] did not itself injure the plaintiff. Whatever support it adds to the claim that a failure to warn injured the plaintiff, the failure to keep records longer than five years cannot constitute a tort separate from the failure to warn claim."

Plaintiff responds that she "did not allege a separate claim for 'negligent record-keeping.'" She explains:

> "Plaintiff argued, and the jury concluded, that [defendant's] failure to keep adequate records of injuries resulting from use of its product substantially contributed to its failure to provide adequate warning, which in turn substantially contributed to plaintiff's injury."

---

[4] The second subparagraph appears in the trial record labeled "(b)." When plaintiff move to amend her complaint to add the allegation in the second subparagraph, she also moved to strike the "(b)."

The difficulty with plaintiff's argument is that, at the time of her motion to amend, she represented to the trial court that the failure to keep records was a separate specification of negligence. She also argued to the jury that there were two questions to consider under her claim of negligence, "the negligence in failing to put a warning on [the fishbowl] and failing to keep records."[5]

Moreover, with respect to plaintiff's claim for negligence, the trial court instructed the jury as follows:

"Now, in her second claim, [plaintiff] sets forth the allegations that defendant's company was negligent * * *.

---

[5] The thrust of her argument to the jury illustrates the point:

"We look first at the testimony of [defendant's representative]. He's been chosen by their corporation to go around the country and give testimony. It's part of his job.

"Evidence was he's testified on 30 prior occasions. He's the one who makes the decisions regarding warnings at [defendant corporation]. He's the one responsible. He's the one [who] evaluates the prior complaints. He's the one [who] establishes the policy of how long we keep documents, how long they keep documents.

"He's the one [who] takes prior claim history into account, but he didn't keep those records after five years, and even after this lawsuit is filed and he's on the witness stand and I ask him, 'Is this going to make a difference? Are you now going to keep records more than five years now?' He says, 'I don't know. I don't know.'

"So when * * * [plaintiff's] youngest son, who is now three months old, is five and a half in the year 2001, this whole thing could start over again because, according to [defendant], this complaint and this case will be destroyed, won't be kept around because it's not important enough.

"You can tell them that it is important enough. It's very important and you better change that policy.

"Or is the policy for another reason, so lawyers like myself ask for the [two prior] complaints, they don't have it, and when [plaintiff's representative] comes to a deposition he doesn't know about the [third prior] complaint, except that it's been given to him five minutes before. He didn't even know about it, even though that happened in 1984.

"And the question for you, we said we'd talk about negligence. Is that negligence? Well, they said they consider prior claims history in evaluating their need to warn, but do they keep the information about prior claims history, and the answer is not more than five years.

"Is that responsible conduct in light of the foreseeable risks to the consuming public? And is it responsible conduct in light of the foreseeable risks to the consuming public to not put a warning on this product. Those are the questions that I put before you * * *."

"Her allegations of negligence are that the defendant was negligent in failing to provide instructions or warnings regarding the propensity of the fishbowl to shatter *and in failing to keep records* of prior lawsuits for personal injury due to the breakage of the fishbowl.

"* * * * *

"To recover, plaintiff must prove by a preponderance of the evidence that the defendant was at fault or negligent *in at least one respect as alleged in her complaint*." (Emphasis supplied.)

As presented to the jury, plaintiff's argument and the instruction of the court submitted issues of liability on the part of defendant for: (1) the failure to warn of the danger of a particular use; and (2) the manner in which defendant managed the records of the three prior lawsuits. Even though the evidence of the prior complaints could be relevant to prove that defendant knew about and should have warned of the risk of using the fishbowl in a particular manner, the jury was presented with alternative theories of liability and could have found, based on its general verdict, liability because of defendant's failure to keep records.

■ We have not been cited to, nor are we aware of, any recognized duty extended for the benefit of users of chattels and imposed on the suppliers of chattels to keep records of past complaints in a particular way or for a particular period of time. By itself, the failure to keep records could not have caused the fishbowl to shatter, causing plaintiff's injuries. At most, the maintenance of records could have resulted in the issuance of a warning to defendant. The gravamen of the theory of liability is the failure to warn. The failure to keep records of past lawsuits does not alter the duty to warn if it existed. Therefore, the failure-to-keep-records claim does not state a separate claim in negligence. It was error for the trial court to deny defendant's motion to dismiss the negligent record-keeping specification of negligence.

■ Because the jury returned a general verdict, "we can't tell" whether it found defendant liable for "negligent record-keeping," or on one of plaintiff's other theories. Under the rule of *Whinston v. Kaiser Found. Hosp.*, 309 Or 350, 357, 788 P2d 428 (1990), we are required to reverse and remand

for a new trial. Plaintiff argues otherwise, contending that the rule of *Whinston* applies only when the court, over a party's objection, submits to the jury an allegation that is unsupported by the evidence. We disagree with that argument. Here, defendant objected to a specification of negligence added to the complaint after the evidentiary phase of the trial was over. That specification was relied on by plaintiff in her argument to the jury. The amendment to her pleading permitted plaintiff to use the evidence of the prior complaints as proof of a new specification of negligence rather than merely as evidence that defendant should have known of the risk of a particular use and should have warned against that use. As a result, the jury could have believed that the evidence was insufficient to put defendant on notice that it should warn of a danger of a particular use, while still permitting a verdict for "bad" record-keeping. The result is the same whether there is insufficient evidence to support an allegation or whether the jury rendered a verdict on an improper specification of negligence. We cannot determine upon which allegation the jury based its verdict. A new trial must be granted.

We do not reach defendant's other assignments of error regarding jury instructions or punitive damages in the light of our disposition.

Reversed and remanded for a new trial.