Submitted on remand from the Oregon Supreme Court March 22, affirmed
July 11, 2001

## Arleen E. WADDILL,
*Respondent,*

*v.*

## ANCHOR HOCKING, INC.,
a Delaware corporation,
*Appellant.*

### 9405-03390; A91012

27 P3d 1092

Robert H. Riley, Catherine Masters Epstein, Neil Lloyd, Schiff Hardin & Waite, Chicago, Illinois, and Stephen S. Walters and Stoel Rives LLP, Portland, for appellant.

Kathryn H. Clarke and D. Lawrence Wobbrock, Portland, for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, P. J., retired.

## EDMONDS, P. J.

This case concerns whether a manufacturer of fishbowls is liable to a consumer because of the failure of the manufacturer to warn that its fishbowls are subject to shattering after they acquire small cracks or dings during ordinary use. Plaintiff brought this action to recover for injuries that she suffered when a fishbowl that defendant manufactured shattered while she was carrying it. We originally reversed the judgment in favor of plaintiff and remanded the case for a new trial. *Waddill v. Anchor Hocking, Inc.*, 149 Or App 464, 944 P2d 957 (1997). On review, the Supreme Court reversed our decision and remanded the case to us to decide several issues that we had not needed to consider in our first decision. *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 8 P3d 200 (2000), *on recons* 331 Or 595, 18 P3d 1069 (2001). We now affirm the judgment.

According to plaintiff, the fishbowl that defendant manufactured shattered with no warning, and without touching or bumping into anything, after she had used it for several months. The jury could have found, based on the testimony of plaintiff's experts, that the fishbowl had developed a small crack or ding during normal use and that the stresses from being carried while filled with water suddenly caused the crack to grow catastrophically. Pieces from the shattering fishbowl severely and permanently injured plaintiff's arms and wrists. In her complaint, plaintiff alleged that defendant's failure to warn of the necessity of inspecting the fishbowl for small cracks or dings constituted negligence and made the fishbowl dangerously defective. She sought compensatory and punitive damages as a result of her injuries. The jury determined that plaintiff's actual damages totaled $134,472; it apportioned 75 percent of the fault for her injuries to defendant and 25 percent to plaintiff. The jury also awarded plaintiff punitive damages of $1,000,000. After reducing the compensatory damages to reflect the jury's determination of fault, the court entered judgment in plaintiff's favor for $1,100,854.

In our previous decision, we held that (1) the court did not err in admitting evidence of three previous cases in

which the plaintiffs had alleged that defendant's fishbowls had shattered in ways similar to what plaintiff alleged happened in this case; (2) plaintiff had properly stated claims for strict liability and negligence for defendant's failure to warn; but (3) plaintiff's additional allegation that defendant failed to keep proper records of the previous claims was not an independent basis for a claim. Because we could not tell whether the jury had based its verdict on the improper claim, we reversed and remanded for a new trial. *Waddill*, 149 Or App at 478-79. On review, the Supreme Court held that defendant had waived the defense of failure to state a claim by not raising it in a timely fashion. It originally reversed our decision and affirmed the trial court. *Waddill*, 330 Or at 383-84. On reconsideration, the court modified its disposition and remanded the case to us to consider those assignments of error that we had not previously considered. *Waddill*, 331 Or at 595.[1]

In its petition for reconsideration to the Supreme Court, defendant described the issues that we had not decided as (1) whether the probative value of the evidence of the previous complaints was outweighed by the risk of undue prejudice; (2) whether a jury instruction on the failure to warn of a known risk correctly stated Oregon law; and (3) whether any award of punitive damages was proper and, if so, whether the amount awarded was excessive. We discuss those issues in that order.

■ To support its argument that the unfair prejudicial effect of the evidence of the previous complaints substantially outweighed their probative value, defendant relies primarily on the use that plaintiff allegedly made of the evidence after the trial court decided to admit it. According to defendant, the court admitted the evidence as relevant to demonstrate that defendant had notice of a problem with its fishbowls shattering before it manufactured plaintiff's fishbowl. However, defendant argues that plaintiff went beyond that ground for admission of the evidence and used the evidence for the substantive purpose of proving that the fishbowls in

---

[1] Because of the scope of the remand, we do not reexamine those previous rulings that the Supreme Court's decision did not affect.

the previous cases broke for the same reason that the fishbowl broke in this case. The difficulty with defendant's argument is that it has nothing to do with whether the court's original decision to admit the evidence was correct. In making that decision, the court had to weigh the probative value of the evidence against its unfair prejudicial effect at the time that it ruled. That plaintiff may have subsequently used the evidence in ways that did not comply with the court's limitations on its admissibility has no bearing on whether the court erred in its original ruling. If plaintiff attempted to use the evidence for a purpose that went beyond the scope of the court's ruling, defendant could have moved that the court reconsider its decision, requested a limiting instruction, or objected to the purposes for which plaintiff sought to use the evidence. It did not do so, with one exception that we now discuss.

Defendant's product engineering manager testified that the fishbowl could not have shattered in the way that plaintiff described and that there must have been contact between the fishbowl and something else. On cross-examination, plaintiff asked:

"Q. What about the other people that filed complaints, and they said they had, they hadn't bumped it? You heard Ms. Gifford testify by deposition and Mrs. Bocala testify that it had never been bumped and banged to their knowledge, and it just exploded. You heard that testimony, did you not, sir?

"A. Yes, along with the testimony of uneven glass.

"Q. You heard that testimony that it just exploded?

"A. Yes.

"[Defendant's attorney]: Your Honor, this evidence I thought was for—I'd object on relevance in terms it's the earlier complaints that were noticed.

"THE COURT: I didn't hear your last

"[Defendant's attorney]: The earlier complaints were for notice, as I understood your ruling, were for notice.

"THE COURT: All right. The answer will stand.

"Next question, please.

"Q. (By [plaintiff's attorney]): Don't you think that information, if it was in the possession of Anchor Hocking, would have been adequate notice for Anchor Hocking to have to evaluate what had been occurring in these bowls? That that would be important information for them to know?"

Because plaintiff's question after the court's ruling refocused on the issue of notice, there is no basis for us to conclude that the trial court's ruling during trial caused any prejudice to defendant even if the use of the evidence before the objection exceeded the scope of the earlier ruling.

██ We conclude that the trial court did not err in ruling that the evidence of the prior instances of defendant's fishbowls shattering was substantially similar[2] to plaintiff's circumstances to make the evidence relevant for the limited purpose of demonstrating that defendant had notice of that propensity under ordinary use, notice that could require a prudent manufacturer to issue a warning to the consumers about the use of its product. OEC 401; OEC 402. *See also Oberg v. Honda Motor Co.*, 316 Or 263, 268-69, 851 P12d 1084 (1993), *rev'd on other grounds sub nom Honda Motor Co. v. Oberg*, 512 US 415, 114 S Ct 233, 129 L Ed 2d 335 (1994) (holding that evidence of reported problems with the defendant's product overturning backwards was admissible to prove that the defendant had notice of a dangerous defect in its product). We also conclude that the trial court did not abuse its discretion under OEC 403 at the pretrial hearing when it determined that the probative value of the evidence was not substantially outweighed by any unfair prejudice arising from the admission of the evidence. "Relevant

---

[2] In its petition for reconsideration before the Supreme Court, defendant argued that we ignored the rule of *Conachan v. Williams*, 266 Or 45, 60-61, 511 P2d 392 (1973), that the court must undertake a "gate keeping" function by determining whether there is evidence of "substantial similarity" between the prior complaints and plaintiff's circumstances before permitting the introduction of the evidence of the prior complaints for any purpose, including notice to defendant of a problem that should have prompted a warning to consumers. In fact, we implicitly applied such a test and answered defendant's argument without an express reference to *Conachan*. After describing the evidence from the prior occurrences, we said that there was evidence in the pretrial hearing from which a trier of fact could find that "plaintiff sustained physical injuries under almost identical circumstances to those circumstances that caused injuries to other complainants." 149 Or App at 469.

evidence often has the effect of proving one party's position while harming the other's." *McCathern v. Toyota Motor Corp.*, 332 Or 59, 71, 23 P3d 320 (2001). Here, the potential prejudice that the evidence could also be viewed as proving that defendant manufactured fishbowls with a defective design (a theory not advanced by plaintiff) does not prevent the admissibility of the evidence for the limited purpose of demonstrating that defendant's notice of a problem that occurred during the ordinary use of its product should have prompted a warning on its part.

■ Defendant next asserts that the trial court's instruction on its duty to warn of a potential hazard was incorrect. According to defendant, the instruction misstated Oregon law because it in effect told the jury that defendant is liable for a failure to warn regardless of whether it knew or should have known that its fishbowls had a propensity to shatter with ordinary use. Defendant concedes that it failed to except to the instruction. ORCP 59 H provides:

> "No statement of issues submitted to the jury pursuant to subsection C(2) of this rule and no instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception is made immediately after the court instructs the jury. Any point of exception shall be particularly stated and taken down by the reporter or delivered in writing to the judge. It shall be unnecessary to note an exception in court to any other ruling made. All adverse rulings, including failure to give a requested instruction or a requested statement of issues, except those contained in instructions and statements of issues given, shall import an exception in favor of the party against whom the ruling was made."

Nonetheless, defendant argues that the trial court's instruction was error on the face of the record. Accordingly, it asks us to review its assignment despite its failure to voice an exception to the instruction.

The substantive issue presented by defendant's argument is whether a statement in *Phillips v. Kimwood Machine Co.*, 269 Or 485, 525 P2d 1033 (1974), that the "knew or should have known" standard does not apply to strict liability failure to warn claims has been legislatively

superseded by the subsequent enactment of ORS 30.920(3). That is the kind of issue that cannot be the subject of an unpreserved claim of error under the criteria that the Supreme Court described in *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991). One of those criteria is that the error must be obvious and not reasonably in dispute. *Id.* at 381-82. Defendant's claim of error under this assignment does not satisfy that characterization.

■ Finally, we consider whether the evidence permitted the jury to award punitive damages and, if so, whether the evidence supports the amount that the jury awarded.[3] ORS 30.925 is the beginning point for determining the criteria for awarding punitive damages in a products liability case. The relevant portions of the 1979 version of the statute, which applies to plaintiff's claim,[4] provide:

> "(1) In a product liability civil action, punitive damages shall not be recoverable unless it is proven by clear and convincing evidence that the party against whom punitive damages is [*sic*] sought has shown wanton disregard for the health, safety and welfare of others.
>
> "* * * * *
>
> "(3) Punitive damages, if any, shall be determined and awarded based upon the following criteria:
>
> "(a) The likelihood at the time that serious harm would arise from the defendant's misconduct;
>
> "(b) The degree of the defendant's awareness of that likelihood;
>
> "(c) The profitability of the defendant's misconduct;
>
> "(d) The duration of the misconduct and any concealment of it;
>
> "(e) The attitude and conduct of the defendant upon discovery of the misconduct;
>
> "(f) The financial condition of the defendant; and

---

[3] Defendant does not assert that the court's instructions on punitive damages were incorrect.

[4] The legislature amended ORS 30.925 in 1995. Or Laws 1995, ch 688, § 4. The amendments apply only to cases filed on or after September 9, 1995, the effective date of the changes. Or Laws 1995, ch 688, § 5. Plaintiff filed this case in 1994.

"(g) The total deterrent effect of other punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, punitive damage awards to persons in situations similar to the claimant's and the severity of criminal penalties to which the defendant has been or may be subjected."

We have discussed the requirements for punitive damages in two recent "failure to warn" cases.[5] In *Lakin v. Senco Products, Inc.*, 144 Or App 52, 925 Or 107 (1996), *aff'd* 329 Or 62, 987 P2d 463, *on recons* 329 Or 369, 987 P2d 476 (1999), the evidence permitted the jury to find the following facts. The plaintiff was seriously injured when a nail gun that the defendant manufactured double-fired in a way that led to a third firing that sent a nail into the plaintiff's brain. The defendant was aware of the nail gun's tendency to double fire, but it conducted no tests to determine how frequently it did so or what injuries might result from a double firing. If it had conducted those tests, the defendant would have known of the gun's potential for injury and could have easily changed both the gun's design and the accompanying warnings. The jury could have believed that the defendant's decisions not to conduct tests or to issue better warnings were motivated, at least in part, by its desire to sell additional nails, which were a major source of its profits from the gun. We concluded that, if the jury found those facts to be true, they could provide clear and convincing evidence that the defendant's conduct satisfied the requirements of ORS 30.925.[6] *Lakin*, 144 Or App at 71-74.

---

[5] Defendant has moved for leave to file a memorandum on remand concerning the appropriateness and amount of the award of punitive damages. We deny the motion. We discuss all but one of the cases that defendant mentions in the course of analyzing the issues. The remaining case, *Cooper Industries, Inc. v. Leatherman Tool*, 532 US 424, 121 S Ct 1678, 149 L Ed 2d 674 (2001), concerns the standard of appellate review of a trial court's action on a motion to reduce an award of punitive damages as excessive. Assuming that the Court was stating a requirement of due process rather than exercising its supervisory authority, we understand *Leatherman* to require us to review the amount of a punitive damages award as a matter of law, without deferring to the trial court's judgment. That, at least, appears to be what the Court means by "*de novo*" review of legal questions, a concept that Oregon courts do not use. *See Trabosh v. Washington County*, 140 Or App 159, 163 n 6, 915 P2d 1011 (1996). In any case, we have reviewed the relevant issues consistently with the court's holding in *Leatherman*.

[6] On review, the Supreme Court agreed with our conclusions in that regard. *Lakin*, 329 Or at 82-84.

In *Axen v. American Home Products Corp.*, 158 Or App 292, 974 P2d 224, *on recons* 160 Or App 19, 981 P2d 340, *rev den* 329 Or 357 (1999), *cert den* 528 US 1136 (2000), the defendant warned that optic neuritis was a rare side effect of using a drug that it manufactured, but it did not warn that optic neuropathy resulting in vision loss was also a side effect. There was evidence that the defendant knew of the danger and effect of optic neuropathy and made a conscious decision not to warn about that side effect, at least in part because of the possible effect of a warning on the defendant's ability to market the drug. Thus, there was evidence from which the jury could conclude, by clear and convincing evidence, that the defendant acted with a disregard of or an indifference to a known risk to consumers out of a motive for profit. 158 Or App at 311-13.

Defendant relies heavily on *Andor v. United Air Lines*, 303 Or 505, 511-13, 739 P2d 18 (1987), in which the Supreme Court discussed punitive damages in a negligence case. In *Andor*, the court explained that the issues for a trial court to consider in determining whether punitive damages might be appropriate in a particular case are similar to, although balanced differently from, the issues in a claim for intentional infliction of emotional distress. It summarized those issues by stating that "[p]unitive damages * * * are a penalty for conduct that is culpable by reason of motive, intent, or extraordinary disregard of or indifference to known or highly probable risks to others." 303 Or at 517. *Andor* involved an airplane crash that was the result of the combination of a repair to a landing gear that led the crew to be uncertain whether the gear had properly extended and the pilot's unwillingness to accept assurances that the landing gear was safe. In holding that punitive damages were not appropriate, the court stated that the evidence showed only that the company and the pilot had each acted negligently. The accident was the result of a negligent repair combined with a reaction by the pilot that the jury could find to be foreseeable. That evidence was sufficient to subject the company to liability for compensatory damages, but it was insufficient to support an award of punitive damages. The Supreme Court explained,

"[M]ere failure to foresee the pilot's reactions is not enough for punitive damages. If this sufficed, it would support a claim for punitive damages whenever some persons within an organization failed to anticipate foreseeable risks of substandard performance by others in the organization. For punitive damages, some *conscious disregard* of or *highly irresponsible indifference* to this human element in the decision on equipment is required." *Andor*, 303 Or at 517 (emphasis added).

Defendant argues here that, as in *Andor*, the most that plaintiff has shown is that it acted negligently in several ways and that one kind of negligence, added to another kind of negligence, does not provide a basis for punitive damages. However, defendant ignores some crucial aspects of the evidence. According to defendant's product engineering manager, he had not known before this lawsuit of any previous injuries from defendant's fishbowls, nor did he know whether defendant had ever studied whether chips or dings might lead to an unexpected shattering from the weight and force that water would exert on a fishbowl during its ordinary use. Moreover, defendant had no consistent policy concerning retention of documents or complaints filed against it for fishbowls that injured people. Although defendant's representative agreed that the corporation had the responsibility to build into its data collection system a way to know what was happening to its products once they were put into the hands of consumers, he admitted that the company continued to destroy documents that were more than five years old. The manager was also unaware of any market research to determine whether customers appreciated the latent hazards that might accompany the normal use of a fishbowl.

Based on that evidence, the jury could have found that the evidence was clear and convincing that defendant was aware of the risk to consumers created by its product, consciously chose to ignore that information, and continued to market its product without a warning. The jury could also have found that the preparation and the distribution of a warning to accompany the fishbowls would have imposed only insignificant costs on defendant. In our view, that conscious indifference to the possibility that the fishbowl could injure someone during ordinary use and the failure to warn of

that possibility cause this case to fall within the criteria of ORS 30.925(3). Such evidence implies a wilful disregard of a known risk to consumer safety, distinguishes this case from the ordinary negligence in *Andor*, and makes it more like the profit-motivated, conscious disregard of risks that existed in *Lakin* and *Axen*. We conclude that the evidence was sufficient to permit the jury to award punitive damages under the statute.

■　　Defendant next argues that the amount of punitive damages that the jury awarded was grossly excessive under the Fourteenth Amendment.[7] In *Parrott v. Carr Chevrolet, Inc.*, 331 Or 537, 17 P3d 473 (2001) the Supreme Court evaluated the standards for post-judgment review of punitive damage awards in light of *BMW of North America, Inc. v. Gore*, 517 US 559, 116 S Ct 1589, 134 L Ed 2d 809 (1996), and *Honda Motor Co. v. Oberg*, 512 US 415, 114 S Ct 2331, 129 L Ed 2d 336 (1994). It summarized its conclusions:

> "A jury's punitive damages award is not 'grossly excessive'—and, therefore, will not be disturbed on review—if it is within the range that a rational juror would be entitled to award in light of the record as a whole. * * * [T]he range that a rational juror would be entitled to award depends on the following: (1) the statutory and common-law factors that allow an award of punitive damages for the specific kind of claim at issue * * *; (2) the state interests that a punitive damages award is designed to serve * * *; (3) the degree of reprehensibility of the defendant's conduct * * *; (4) the disparity between the punitive damages award and the actual or potential harm inflicted * * *; and (5) the civil and criminal sanctions provided for comparable misconduct[.]" *Parrott*, 331 Or at 555.

We have already discussed most of the statutory factors that permit an award of punitive damages. As to the other statutory factors, there is no evidence of any other punishment imposed on defendant for those actions, and the amount of the award is approximately one month of defendant's net profit.

---

[7] Defendant followed the appropriate post-trial procedures for raising this issue.

We turn to the remaining factors that *Parrott* describes. The primary state interest involved is preventing injury to Oregonians from defective products. Punishing manufacturers who fail to investigate the safety of their products after learning of injuries that these products caused furthers that interest, and ORS 30.925 puts manufacturers on notice that such punishment is a possibility. In addition, there is no evidence that defendant received any other civil or criminal punishment for this conduct. The final factor is the relationship between the punitive damages award and the actual damages that plaintiff suffered. Plaintiff's injuries were serious, and her damages were substantial. Even after reducing the jury's award of compensatory damages to reflect plaintiff's 25 percent share of the fault, the judgment in her favor for those damages exceeds $100,000. It is common knowledge that broken glass is dangerous and can cause serious injuries. We cannot say that it is excessively disproportionate to punish a company that makes glass products that can cause the degree of damage that plaintiff suffered by an award that is no more than ten times the actual injury that its actions caused.[8] That is particularly the case when a defendant, as the defendant here, consciously ignores indications that its product is unsafe. We conclude that the $1 million punitive damage award is within the range that a reasonable juror could award under the criteria that the court identified in *Parrott*.

 Defendant's final argument is that the court should have reduced the award of punitive damages to reflect plaintiff's share of the fault for her injuries. It argues that ORS 18.470(1) requires that result because the statute refers to "any damages."[9] Defendant confuses apples with oranges.

---

[8] In *Parrott*, where the defendant's actions were more reprehensible but the only injury was economic, the Supreme Court approved a punitive damages award that was 87 times the compensatory damages. By making those comparisons, we do not mean to suggest that any particular ratio between compensatory and punitive damages is or is not excessive.

[9] ORS 18.470(1) provides:

"Contributory negligence shall not bar recovery in an action by any person or the legal representative of the person to recover damages for death or injury to person or property if the fault attributable to the claimant was not greater than the combined fault of all persons specified in subsection (2) of this section, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the claimant. This section is not intended to create or abolish any defense."

The purpose of ORS 18.470 is to replace contributory negligence as an absolute defense to a negligence action with comparative fault. The effect of the statute is that the defendant is not required to pay the plaintiff for that portion of the plaintiff's actual damages that are the result of the plaintiff's own fault. The words "any damages" in the statute have nothing to do with punitive damages, which are not intended to compensate a plaintiff for his or her injuries. Rather,

> "[t]he legal doctrine of punitive damages is founded on the theory that certain intentional acts should be punished or deterred. Punishment and deterrence concern behavior that society finds undesirable. Punishment and deterrence are not related to actual or compensatory damages. Punitive damages are not to compensate an injured party, but to give bad actors a legal spanking." *Lane County v. Wood*, 298 Or 191, 203, 691 P2d 473 (1984).

That the jury found that plaintiff was partly responsible for the events that led to her injuries has nothing to do with the reprehensibility of defendant's conduct or the appropriate punishment for it. Plaintiff did not contribute to the conduct that justifies giving defendant a legal spanking; thus, there is no reason that the fact that she did contribute to the conduct that caused her injuries should affect the severity of that spanking.[10]

Affirmed.

---

[10] Defendant also relies on *Seiders v. Hefner*, 89 Or App 55, 747 P2d 1003 (1987), *rev den* 305 Or 576 (1988), in support of its argument. It points to that case as an example of where we affirmed a punitive damage award that had been reduced by the amount of the plaintiff's comparative fault. However, the issue raised here by defendant was not raised in *Seiders*.