Argued and submitted November 3, 2003, affirmed on appeal and on cross-appeal
July 21, 2004

James R. ROOP,
*Appellant,*

*and*

Stanley STEVENS,
Personal Representative of the Estate of
Hazel Stevens, deceased,
*Plaintiff,*

*v.*

PARKER NORTHWEST PAVING CO.,
an Oregon corporation,
dba River Island Sand & Gravel Co.;
Robert D. Traverso; Susan K. Hammond;
and Anderson and Yamada, P.C.,
an Oregon professional corporation,
*Respondents,*

*and*

Marilyn Moylan WALL,
*Defendant.*

James R. ROOP,
*Plaintiff,*

*and*

Stanley STEVENS,
Personal Representative of the Estate of
Hazel Stevens, deceased,
*Appellant - Cross-Respondent,*

*v.*

PARKER NORTHWEST PAVING CO.,
an Oregon corporation,
dba River Island Sand & Gravel Co.;
and Robert D. Traverso,
*Respondents - Cross-Appellants,*

*and*

Susan K. HAMMOND
and Anderson and Yamada, P.C.,
an Oregon professional corporation,
*Respondents,*

*and*

Marilyn Moylan WALL,
*Defendant.*

9709-06913; A104616 (Control), A104635

Dan ASPENWALL,
John Pointer, and Dale Sherbourne,
*Appellants,*

*v.*

PARKER NORTHWEST PAVING CO.,
an Oregon corporation,
dba River Island Sand & Gravel Co.;
Anderson & Yamada, P.C.,
an Oregon professional corporation;
and Susan Hammond,
*Respondents.*

9708-06502; A104871 (Cases Consolidated)

94 P3d 885

Linda Williams and Mark McDougal argued the cause for appellants James R. Roop, Dan Aspenwall, John Pointer, and Dale Sherbourne and appellant - cross-respondent Stanley R. Stevens. With them on the briefs were Gregory Kafoury, Kafoury & McDougal, and Patricia Ferrell-French.

Michael T. Stone argued the cause for respondents - cross-appellants Parker Northwest Paving Co. and Robert D. Traverso. With him on the briefs were Barbara L. Johnston, William H. Stockton, and Brisbee & Stockton.

Thomas W. Brown argued the cause for respondents Susan K. Hammond and Anderson and Yamada, P.C. With him on the brief were Wendy M. Margolis and Cosgrave, Vergeer & Kester LLP.

Before Landau, Presiding Judge, and Haselton and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

This is an action for wrongful initiation of civil proceedings. Plaintiffs Aspenwall, Pointer, and Sherbourne were the hosts of a Washington County cable access television program, "The Water Forum." Plaintiffs Roop and Hazel Stevens were guests on a broadcast of the program.[1] During that broadcast, plaintiffs made statements about a proposed gravel operation on the Clackamas River to be conducted by Parker Northwest Paving Co., doing business as River Island Sand & Gravel Co., and its president, Robert D. Traverso (collectively, Parker NW), that Parker NW regarded as defamatory. Parker NW retained defendants Susan K. Hammond and Anderson and Yamada, P.C. (Hammond), to bring a defamation action against plaintiffs. Ultimately, however, Parker NW voluntarily dismissed the action.

Plaintiffs then brought this wrongful initiation action against Parker NW and Hammond, seeking noneconomic and punitive damages. Among other rulings, the trial court struck plaintiffs' claims for punitive damages against all defendants; excluded evidence relating to plaintiffs' superseded pleadings; granted Hammond's motion for a directed verdict in her favor against all plaintiffs; denied plaintiffs' motions for directed verdicts against Parker NW; and declined to give various jury instructions requested by the parties. Plaintiffs' claims against Parker NW were submitted to the jury, which returned a verdict in favor of plaintiff Stevens and in Parker NW's favor against the other plaintiffs.

Plaintiffs appeal, advancing over two dozen assignments of error. In regard to the verdict in its favor against plaintiffs Roop, Aspenwall, Pointer, and Sherbourne, Parker NW cross-assigns error to the trial court's failure to give a requested jury instruction and to the granting of plaintiffs' motion to exclude certain evidence. In regard to the verdict in plaintiff Stevens's favor, Parker NW cross-appeals, raising the same issues as are raised in its cross-assignments of error. We affirm on the appeal and on the cross-appeal.

---

[1] Plaintiff Stevens is now deceased; her personal representative has been substituted for the purpose of this appeal.

# I. BACKGROUND

We begin with an overview of the facts, describing the original defamation action, the subsequent action for wrongful initiation of civil proceedings, and the trial court's rulings that are relevant to the assignments and cross-assignments of error on appeal. As necessary, we later detail additional relevant facts when we address the parties' specific arguments.

## A. *The Defamation Action*

Parker NW is in the gravel business. In 1994, it was seeking approval from Clackamas County to expand a gravel mining operation on the Clackamas River. The county reviewed an application under the Goal 5 natural resources inventory process. Plaintiffs Roop and Stevens, who were members of a local citizen's group, Friends of Barton Park and The Scenic Clackamas River, opposed the application and testified against it at several county hearings.

Parker NW's president, Traverso, was concerned that the company was being defamed in the county hearings. He asked the company's land use attorney, Parisi, whether it could bring legal action against the opponents of the permit application. Parisi advised against doing so. Traverso also asked Parker NW's corporate attorney, Wall, whether it could bring an action for defamation for statements made in the county hearings. In a May 1994 letter, Wall advised Traverso that, assuming that the application process was quasi-judicial in nature, statements made therein were absolutely privileged and that it would be "safer to proceed against outright lies" after the completion of the hearing process.

On September 22, 1994, plaintiffs Aspenwall, Sherbourne, and Pointer hosted a broadcast of "The Water Forum." Plaintiffs Roop and Stevens appeared as guests on the program; Parker NW and the Clackamas County commissioners were invited to appear but did not attend. The five plaintiffs made various statements about Parker NW and the proposed gravel mining operation. Among other things, one or more of the plaintiffs stated that the proposed operation would "do further damage to the Clackamas [River]" and

would contaminate the drinking water of some 200,000 nearby residents; that Parker NW had "paid off" the commissioners and the county; that Parker NW had previously illegally constructed a dike in the Oxbow area without first getting a permit; that Parker NW's construction operations had disturbed Indian burial sites; and that Parker NW had connived to have taxpayers foot the bill for some of its construction operations.

Parker NW's land use attorney, Parisi, saw the program and believed that the company's reputation had been impugned. In November 1994, Parisi's law firm prepared a written memorandum analyzing the statements made on the program. The memorandum did not, however, recommend pursuing legal action against plaintiffs.

Two months later, Traverso asked Hammond to review the matter. After watching a videotape of the program, Hammond advised Traverso in writing that, in her opinion, River Island Sand & Gravel, and "possibly" Traverso individually, had a claim for defamation against the five participants.

Hammond opined that the "overall tenor" of the program was that Parker NW, as well as the county commissioners, were "acting illegally as it relates to the granting of the permit." She listed particular statements that she believed were defamatory and opined that those statements implied, among other things, that Parker NW was bribing county officials; that it was committing the felony of abuse of corpse in regard to "Indian graves" at the site; that it was contaminating the Clackamas River "so as to intentionally harm 200,000 residents downstream" who relied on the river for drinking water; that it was "disregarding/ignoring" statewide land use laws; and that it was using taxpayer money to further its own operations. She characterized plaintiffs' statements on the program as "neither fair nor accurate" and opined that, at the least, plaintiff Stevens had made statements that she knew to be false or lacked reasonable grounds to believe were true.

Hammond recommended that, if Parker NW brought a defamation action, it name all five participants in the program because, according to Hammond, each of them made defamatory statements and also "acquiesced" in the

others' comments. She noted that the statutory 20-day time period for requesting the broadcaster's retraction of the statements had passed.[2]

Finally, Hammond noted various "practical considerations," including the possible reluctance of county commissioners to become involved as witnesses in such a case; the possibility that the participants had no funds to satisfy any judgment; the possibility that jurors would see the participants as "the little guys"; and the risk of "dredging up" the issue after it had become "dormant." Hammond noted that, as an alternative to bringing the action, Parker NW or its legal counsel might inform the participants in writing that it was demanding that they "cease and desist" from future statements, thereby "put[ting] them on notice" of their probable legal liability and the fact that Parker NW "will tolerate no such conduct in the future."

Hammond and Traverso also spoke by telephone about the possibility of legal action. Hammond's written notes from the conversation included the following unattributed comments: "let air out of group," "[t]hese people need to be put away," and "breaking backs." Traverso told Hammond that there were documents in his and Parisi's offices pertaining to the falsity of plaintiffs' statements; Hammond did not review the documents. Traverso did not inform Hammond of Wall's or Parisi's opinion about possible legal action or provide her with a copy of the memorandum prepared by Parisi's office.

On September 19, 1995, Hammond filed a defamation action on Parker NW's behalf, asserting claims for libel *per se* and slander *per se* against each plaintiff. On October 24, 1995, Hammond spoke for the first time to Parisi, who stated that plaintiff Stevens was a "liar" and talked about

---

[2] *Former* ORS 30.160 (2001), *renumbered as* ORS 31.210 (2003), provided, in part:

"(1) In an action for damages on account of a defamatory statement published or broadcast in a newspaper, magazine, other printed periodical, or by radio, television or motion pictures, the plaintiff shall not recover general damages unless:

"(a) A correction or retraction is demanded but not published as provided in ORS 30.165 [(2001)] [setting out procedural requirements for a demand for correction or retraction][.]"

"whack[ing]" plaintiffs. Hammond did not ask Parisi for documents pertaining to the truth or falsity of plaintiffs' statements. Around November 8, 1995, Hammond received from Traverso a copy of the Parisi firm's memorandum. On November 10, she filed an amended complaint alleging additional claims against Stevens.

After the filing of the complaint, plaintiff Roop felt "guarded" and "fearful" of testifying further against Parker NW's permit application. At the final hearing on the application, which occurred on December 7, 1995, Roop spoke briefly and Stevens held up a photograph. Immediately after the hearing, Hammond told Stevens's husband that, the previous day, Parker NW had dismissed the action against plaintiffs.

## B. *The Wrongful Initiation of Civil Proceedings Action*

Plaintiffs then filed complaints for wrongful initiation of civil proceedings against Parker NW and Hammond, alleging various facts relating to defendants' initiation and prosecution of the defamation action against them.[3] Their original complaints sought noneconomic damages for each plaintiff in the amount of $100,000 from each defendant.[4] Plaintiffs later sought leave to amend their complaints to add claims for punitive damages, which the court granted. Plaintiffs filed an amended consolidated complaint in which they sought both noneconomic and punitive damages.

Defendants moved to strike plaintiffs' punitive damages claims. Relying on *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979), among other cases, defendants argued in part

[3] Plaintiffs Roop and Stevens filed one wrongful initiation action and plaintiffs Aspenwall, Pointer, and Sherbourne filed a separate wrongful initiation action. Both sets of plaintiffs named Parker NW and Hammond as defendants. Roop and Stevens also named Wall as a defendant; she was dismissed from the case before trial. The cases were tried together and were consolidated for appeal. Unless otherwise noted, the positions at trial of the two sets of plaintiffs coincided, as did the positions of Parker NW and Hammond. In this court, some assignments of error pertain to fewer than all plaintiffs, or to Parker NW or Hammond but not both; all assignments are described accordingly. References to "defendants" are to both Parker NW and Hammond. References to Parker NW's president, Traverso, are to him in his individual capacity.

[4] Noneconomic damages are a sufficient basis to support the damages element of a claim for wrongful initiation for civil proceedings. ORS 30.895(1); *Lee v. Mitchell,* 152 Or App 159, 179-80, 953 P2d 414 (1998).

that, even assuming that their defamation claims against plaintiffs had constituted an "abuse" of the right to speak freely as provided in Article I, section 8, of the Oregon Constitution or of the right to a remedy as provided in Article I, section 10, a person injured by such abuse is entitled to noneconomic damages only. Plaintiffs responded in part that none of the elements of a wrongful initiation claim (set out below) implicates the content of protected expression; rather, defendants' actions in initiating civil proceedings against them involved such nonexpressive conduct or activities as drafting, certifying, and filing the defamation complaint and causing summons to issue. They also argued that Article I, section 10, does not protect a person who uses the legal system for an improper purpose and that persons are adequately protected from liability for wrongful initiation of civil proceedings by *former* ORS 30.895[5] and ORCP 17.[6] Hammond filed a reply memorandum, arguing, in part, that "judicial publication of allegations of defamation" constitutes expressive conduct for purposes of Article I, section 8, that ORCP 17 is irrelevant to consideration of what constitutes such conduct, and that the "threat" of punitive damages inhibits the right to pursue a remedy that is guaranteed by Article I,

---

[5] *Former* ORS 30.895 (2001), *renumbered as* ORS 31.230 (2003), provided, in part:

"(1) In order to bring a claim for wrongful use of a civil proceeding against another, a person shall not be required to plead or prove special injury beyond the expense and other consequences normally associated with defending against unfounded legal claims.

"(2) The filing of a civil action within 60 days of the running of the statute of limitations for the purpose of preserving and evaluating the claim when the action is dismissed within 120 days after the date of filing shall not constitute grounds for a claim for wrongful use of a civil proceeding under subsection (1) of this section."

[6] As pertinent here, ORCP 17 C(1) provides that an attorney or party who signs or files a pleading or other court paper makes the certifications set out in subsections (2) through (5) of the rule, including certification that the pleading or other paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, ORCP 17 C(2); that the claims, defenses, and other legal positions taken in the pleading are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, ORCP 17 C(3); that, unless specifically identified as not so certified, the facts alleged in the pleading are supported by evidence, ORCP 17 C(4); and that, unless specifically identified as not so certified, any denials of factual allegations are supported by evidence, ORCP 17 C(5).

section 10. The trial court struck plaintiffs' claims for punitive damages against all defendants, concluding, in part, that

> "both under Article I, section 8, and Article I, section 10, allowing * * * the claims for punitive damages to proceed, would be unconstitutional."

Plaintiffs ultimately filed a second amended consolidated complaint in which they sought only noneconomic damages, but in a significantly greater amount than that sought in their original complaint.[7]

Before trial, plaintiffs moved to exclude any reference to "punitive damages" and, separately, to exclude any reference to the fact that, after plaintiffs' claims for punitive damages were struck, plaintiffs sought, in their second amended complaint, a greater amount of noneconomic damages than they had sought in their original complaints. Defendants did not oppose the former motion. As to the latter motion, defendants countered that such evidence was admissible as a "judicial admission" that was relevant to the purpose of "impeaching the credibility of" plaintiffs' assertion of noneconomic damages.

The trial court granted the former, unopposed motion. The trial court also granted the latter motion to exclude any reference to the amount of noneconomic damages pleaded in plaintiffs' original complaints. The trial court reasoned that, having granted defendants' earlier motion to strike plaintiffs' claims for punitive damages and plaintiffs' motion to exclude any reference to punitive damages, it would be "inappropriate" for evidence of the changed amount of noneconomic damages to be admitted, because there would be no explanation of the circumstances leading to that change. As the court explained, "the amount of money hasn't significantly changed. The label has. And it would be unfair for the defense to [present] an argument that the Plaintiffs dramatically changed the claim for [noneconomic] damages in a vacuum."

---

[7] All five plaintiffs sought damages from Parker NW and Hammond. Stevens and Roop also sought damages from Traverso individually; Aspenwall, Pointer, and Sherbourne did not.

After summarizing the procedural history and timing of the motion to strike the claim for punitive damages, the court reiterated:

> "I don't think it is reasonable to simply introduce to the jury in a vacuum the fact that the Plaintiffs' [noneconomic] damages went from $100,000 to $2 million dollars on a date without explaining all of what it's just taken me quite awhile to explain. And I'm not sure it's appropriate to do it for that purpose.
>
> "It is fair to inquire of the Plaintiffs about what are the facts that supported their claim for [noneconomic] damages in these amounts. And it is fair to keep the Plaintiffs to the proof [of noneconomic] and not punitive damages because they are not in the case.
>
> "But I just don't find the inference one that can reasonably be drawn without reference to the whole history of what happened so far."

The court agreed with defendants that punitive damages "are a whole different kettle of fish" from noneconomic damages and that each type of damages was required to be proved according to its own standards. The court reasoned, however, that, notwithstanding those differences, "to say that the Plaintiffs must have undervalued or overvalued their [noneconomic] damage claim precipitously, without there being any explanation of the context in which that happened, for the purpose of showing this jury that the damages are not in fact significant, I think is unfair in a vacuum."

The case proceeded to trial. At the close of plaintiffs' evidence, Hammond moved for a directed verdict on the ground that there was no evidence as to two "essential elements" of plaintiffs' wrongful initiation claims. First, Hammond argued that there was no evidence that, as Parker NW's legal representative, she lacked probable cause to bring the defamation action. Second, she argued that there was no evidence that she prosecuted the action with malice or with a primary purpose other than that of securing an adjudication of the claims. Specifically, Hammond argued that there was no evidence that she "ratified" the negative "comments"

about plaintiffs that were made by others or that, in prosecuting the claims, she did anything other than follow her client's instructions. Plaintiffs countered that, where Hammond failed to investigate in any manner the truth or falsity of plaintiffs' allegedly defamatory statements, it was inferable that probable cause was lacking to prosecute the defamation action and that, in turn, malice was inferable from the lack of probable cause. Plaintiffs also argued that there was circumstantial evidence of Hammond's malice, such as Traverso's purported comments about "taking the air out of the group"; according to plaintiffs, a jury could find from that evidence that Parker NW had an improper purpose of bringing the claim "as a tool for [its] political agenda" and that Hammond "adopted" that improper purpose.

The trial court concluded that, in regard to probable cause, plaintiffs' evidence demonstrated at most that, at the time of filing the defamation claims, Hammond "didn't score 100 percent on the legal analysis," that she later amended the claim, and that she then dismissed the claims. The court also concluded that the evidence regarding probable cause therefore did not support an inference of malice or improper purpose and that there also was no evidence that Hammond had "any personal animus or any personal desire to do anything other than represent her client in adjudicating the claim." The trial court therefore granted Hammond's motion for directed verdict.

At the close of all the evidence, plaintiffs Roop, Aspenwall, Pointer and Sherbourne moved for directed verdicts in their favor against Parker NW, arguing that there was no evidence demonstrating that, at the time the defamation action was filed, Parker NW had probable cause to believe that plaintiffs' allegedly defamatory statements were false or that plaintiffs knew that the statements were false. In the alternative, plaintiffs argued that certain of their statements were "protected opinion." Plaintiffs also argued that they were entitled to directed verdicts on the ground that there was no evidence in the record that Parker NW was injured by any of their statements. The trial court denied the motions on the ground that, viewed in the light most favorable to defendants, there were issues of fact as to whether

Parker NW had a reasonable basis to believe that its defamation claims were valid and as to whether it suffered injury to its reputation.[8]

Also at the close of the evidence, counsel and the court conducted an extended discussion of jury instructions and the form of the verdict, particularly as to the issue of probable cause. The trial court noted that, under existing precedents, "instructing on the issue of probable cause is very difficult when the jury can find a number of different fact combinations" and that "[a]nother possible procedure is to settle the factual disputes by having the jury answer special interrogatories." Plaintiffs indicated that they did not want "particular factual interrogatories" in the verdict form. Instead, they proposed that the court instruct the jury that, if it found certain facts, defendants either did or did not have probable cause, whereas the verdict form would simply ask whether, in initiating or continuing the defamation action against each individual plaintiff, defendants lacked a reasonable belief that plaintiffs' statements were false or defamatory. Plaintiffs stated that they understood that their approach would preclude the trial court from making any post-verdict determination, based on facts found by the jury, of defendants' probable cause. Counsel for plaintiffs stated that, instead, under their suggested approach,

> "[t]he Court is making the initial threshold. If [the jury] believe[s] this, then [defendants] have probable cause. So, the instruction embodies the Court's determination on probable cause."

Later, as the parties and the court were discussing the verdict form, plaintiffs again stated that, "in light of the fact that the Court would have an instruction: If Defendant[s] actually and reasonably believed X, Y, Z, then Defendant[s] had probable cause," then the question on the verdict

---

[8] For the purpose of plaintiffs' motions for directed verdicts, the trial court separately considered each of plaintiffs' allegedly defamatory statements. The trial court granted plaintiff Stevens's motion for a directed verdict as to one of her allegedly defamatory statements, pertaining to Parker NW's earlier application for a permit to build an "asphalt concrete plant." Stevens later withdrew that motion and, having obtained a verdict in her favor, does not cross-assign error to the denial of the motions for directed verdicts.

form relating to probable cause "should simply be: Did Defendant[s] initiate or continue the defamation action against Plaintiff without probable cause?" The court asked plaintiffs why it was insufficient to instruct the jury that "for the Defendants to have had probable cause they had to have a reasonable basis to believe that [plaintiffs' statements] were false and defamatory." Plaintiffs responded that such an instruction failed to inform the jury "what would be a reasonable basis as far as the law is concerned." The court reiterated that it was "proper" to instruct the jury to consider whether defendants "lacked a reasonable belief based upon the evidence presented here" and that, conversely, it was unable to "fashion an instruction that incorporates every factual contention that goes into the truth, falsity, or uncertainty of the truth or falsity of" plaintiffs' allegedly defamatory statements.

The parties then returned to their discussion of the verdict form. Although plaintiffs submitted to the trial court several written jury instructions pertaining to probable cause, the record does not contain a written instruction involving the trial court's identification of specific facts that would, or would not, constitute probable cause.

Ultimately, the trial court instructed the jury that plaintiffs were required to prove that defendants acted without probable cause in the underlying defamation action; that one element of a defamation claim is that, when the speaker made the allegedly defamatory statement, the speaker knew that the statement was false or the speaker made the statement in reckless disregard of whether the statement was true or false; and that it should determine defendants' probable cause as follows:

> "In order to prevail [in their wrongful initiation claim], one element each of the Plaintiffs must prove * * * is that the Defendants lacked probable cause to initiate or continue the defamation action against each Plaintiff.

> "I instruct you that Defendants had probable cause to initiate or continue the defamation action if Defendants reasonably believed in the existence of facts upon which each claim against each plaintiff is based and either that Defendants correctly or reasonably believed, and that

under those facts the claim may be valid under the law of defamation, as I just defined that for you, or that the Defendants believed to this [e]ffect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within Defendants' knowledge and information.

"In determining whether Defendants had probable cause to initiate or continue the defamation action, you may consider only the facts and circumstances existing at the time the defamation suit was initiated or continued.

"If you do find that Defendants rel[ied] on the advice of counsel, I instruct you to find in favor of the Defendants."

Plaintiffs did not except to that instruction. The verdict question pertaining to probable cause was, "Did defendants Parker Northwest and defendant Traverso initiate or continue the defamation action against [individual named plaintiff] without probable cause?" Neither plaintiffs nor defendants objected.

Next, defendants requested that, after instructing the jury that their defamation action was filed within three days of the running of the statute of limitations, the trial court give the following instruction pertaining to their affirmative defense under *former* ORS 30.895(2):

"Another provision of Oregon law provides that if a lawsuit is filed within sixty days before [the running of the statute of limitations], and if it is filed for the purpose of preserving and evaluating the claim, and if it is thereafter dismissed within 120 days, such a lawsuit cannot be a basis for a claim for wrongful use of a civil proceeding. You are instructed that the defamation lawsuit did meet all the foregoing time requirements. Therefore, the only remaining question for you to determine is whether the defamation lawsuit was filed for the purpose of preserving and evaluating the claim. It is up to you to determine whether defendants filed the lawsuit having as a purpose (*not necessarily the only purpose*) the preservation and evaluation of the claim.

"If you determine that *one of the purposes* of filing the lawsuit was to preserve and evaluate the claim, then your verdict shall be for defendants."

(Emphasis added.)

The trial court declined to give that instruction. The court concluded that, because *former* ORS 30.895(2) referred to filing an action for "the" purpose of preserving and evaluating the claim, the instruction did not accurately reflect the statute.

As noted, the jury returned a verdict in favor of plaintiff Stevens against Parker NW and in favor of Parker NW as to the remaining plaintiffs.

## II. ANALYSIS OF ASSIGNMENTS OF ERROR

### A. *Punitive Damages*

#### 1. *The parties' arguments*

■ In their first through fifth assignments of error,[9] plaintiffs argue that the trial court erred as a matter of law in striking their claims for punitive damages. Specifically, plaintiffs argue that Article I, section 8, did not require that those claims be struck, because the tort of wrongful initiation of civil proceedings does not involve protected speech. They argue that, instead, as to an attorney against whom such a claim is brought, the claim involves tortious conduct such as filing "frivolous" documents or "making false certifications." They also argue that, as to litigants, the protections of Article I, section 8, do not extend to "deceitful conduct" such as concealment of relevant facts and that "ample safeguards"—including limiting jury instructions—exist to protect any aspect of a litigant's conduct that does, in fact, constitute protected expression. Finally, plaintiffs argue that the tort of wrongful initiation of civil proceedings was recognized at the time of the adoption of the Oregon Constitution, and that such a claim therefore constitutes a historical exception to the protections of Article I, section 8.

---

[9] Plaintiffs advance a single, albeit multifaceted, argument in support of their first five assignments of error. We understand them to have treated the trial court's ruling striking punitive damages as subject to five separate assignments of error, one for each plaintiff.

Defendants respond by arguing, among other things, that the trial court's ruling on their motion to strike plaintiffs' claims for punitive damages must be affirmed because the court based its ruling not only on Article I, section 8, but also on Article I, section 10, and plaintiffs present no challenge to that basis for the court's ruling. In reply, plaintiffs ignore that argument and again assert that the recovery of punitive damages for wrongful initiation of civil proceedings is subject to a historical exception from the protections of Article I, section 8.

### 2. *Analysis*

We agree with defendants that, where plaintiffs fail to challenge the alternative basis of the trial court's ruling, we must affirm it. *See, e.g., Jensen v. Medley*, 336 Or 222, 239-40, 82 P3d 149 (2003) (although trial court's jury instruction relating to one of the plaintiff's theories of liability was erroneous, reviewing court nevertheless affirmed the jury's verdict because there was another basis for it that the defendant did not challenge on appeal). We therefore reject plaintiffs' first through fifth assignments of error without further discussion.

### B. *Directed Verdict in Favor of Hammond*

#### 1. *The parties' arguments*

In their sixth through tenth assignments of error,[10] plaintiffs argue that the trial court erred in granting Hammond's motions for directed verdicts in her favor. The parties' arguments concern whether plaintiffs demonstrated at least a jury question as to two of the elements of their wrongful initiation claim: probable cause and improper motive.

Plaintiffs' principal argument as to probable cause is that, because defendants voluntarily dismissed their defamation action, plaintiffs are entitled to a presumption that the action had been filed without probable cause. According to plaintiffs, because Hammond failed affirmatively to rebut that presumption as a matter of law, the trial court's entry of

---

[10] Plaintiffs again assert five assignments of error, presumably one for each plaintiff.

a directed verdict in her favor was error. As to the element of improper purpose, plaintiffs contend that it may be established merely by demonstrating an absence of probable cause. In the alternative, plaintiffs contend that the evidence in the record was sufficient to permit a jury to infer an improper purpose.

Hammond responds that plaintiffs failed to demonstrate jury questions on both elements. With respect to the element of probable cause, Hammond argues that there is no applicable "presumption" that she filed the defamation complaint without probable cause. She argues that, instead, plaintiffs are required to adduce some evidence that she lacked probable cause and plaintiffs failed to make the required showing here. With respect to improper motive, Hammond argues that the trial court correctly granted her directed verdict motion on the ground that plaintiffs presented no evidence, either direct or circumstantial, from which a reasonable jury could find that she acted with malice or an improper purpose.

### 2. *Analysis*

We begin with an analysis of the parties' arguments concerning probable cause, because it is dispositive. In reviewing the trial court's directed verdict in Hammond's favor, we determine whether the facts in evidence, interpreted in plaintiffs' favor, and every beneficial inference that can be drawn from those facts entitled Hammond to a favorable decision as a matter of law. *Jones v. Emerald Pacific Homes, Inc.*, 188 Or App 471, 478, 71 P3d 574, *rev den*, 336 Or 125 (2003). "A directed verdict based on insufficiency of the evidence is appropriate only if there is a complete absence of proof of an essential issue. Therefore, we review the record for *any* evidence that would allow a reasonable factfinder to conclude otherwise." *Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or App 253, 272, 40 P3d 506 (2002) (emphasis in original; citation omitted; internal quotation marks omitted).

Under Oregon law, the elements of a claim for wrongful initiation of a civil proceeding are as follows:

"(1)   The commencement and prosecution by the defendant of a judicial proceeding against the plaintiff;

"(2) The termination of the proceeding in the plaintiff's favor;[11]

"(3) The absence of probable cause to prosecute the action;

"(4) The existence of malice, or as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication of the claim; and

"(5) Damages."

*Alvarez v. Retail Credit Ass'n*, 234 Or 255, 259-60, 381 P2d 499 (1963); *see also Perry v. Rein*, 187 Or App 572, 578, 71 P3d 81 (2003); *Portland Trailer & Equipment v. A-1 Freeman Moving*, 182 Or App 347, 351, 49 P2d 803 (2002); *Restatement (Second) of Torts* § 674 (1977).[12]

■■ For purposes of a claim for wrongful initiation of civil proceedings, probable cause means that the person initiating the civil action "reasonably believes" that he or she has a good chance of prevailing—that is, he or she subjectively has that belief and the belief is objectively reasonable. *Perry*, 187 Or App at 578. Moreover, "probable cause to file civil litigation requires a reasonable belief *before* the claim is filed that evidence exists to prove the allegations made against a particular defendant." *Id.* at 581 (emphasis in original).

■ The standard for probable cause to bring a civil action is less stringent than that required to prosecute a criminal action. *Blandino v. Fischel*, 179 Or App 185, 190, 39 P3d 258, *rev den*, 334 Or 492 (2002); *see also Restatement* § 675 comment j (the question is not whether the litigant is correct in believing that the claim is tenable, but whether that belief is reasonable). Evidence that the underlying action was undertaken upon the advice of counsel, relied on in good faith, that the action had a reasonable probability of success is enough to establish probable cause. *Blandino*, 179 Or App at 191 (citing *Erlandson v. Pullen*, 45 Or App 467, 474-75, 608 P2d 1169 (1980)).

---

[11] The parties apparently do not dispute that the defamation proceeding terminated in plaintiffs' favor.

[12] Although the *Restatement* is not binding on us, "Oregon courts have long considered it, along with its comments, to be an instructive authority in this area." *Portland Trailer & Equipment*, 182 Or App at 356 n 6.

■■■ The voluntary dismissal of a claim does not automatically create a presumption that the claim was filed without probable cause. Any number of explanations might be at the root of such a dismissal. Thus, the significance of the dismissal "depends upon the circumstances under which the proceedings are withdrawn," *Portland Trailer & Equipment*, 182 Or App at 357 (quoting *Restatement* § 674 comment j (internal quotation marks omitted)), and, in particular, whether there is an explanation for the dismissal other than the lack of probable cause. *Alvarez*, 234 Or at 261. Uncontradicted testimony relating to the existence of probable cause cannot be controverted by the mere assertion that the testimony is not credible. *See Blandino*, 179 Or App at 192.

■■■ The standards for probable cause apply to attorney defendants who were alleged to have acted without probable cause in prosecuting civil actions on behalf of their clients. *See id.* at 188, 192 (attorney defendant in wrongful initiation proceeding had probable cause to bring underlying malicious prosecution action against the wrongful initiation plaintiff).

■■ ■■ Once the facts relevant to probable cause are determined, whether the defendants in a wrongful initiation action had probable cause to prosecute the underlying action is a question of law. *Alvarez*, 234 Or at 261 (citing, among other cases, *Hess v. Oregon Baking Co.*, 31 Or 503, 515, 49 P 803 (1897)); *see also Varner v. Hoffer*, 267 Or 175, 178-79, 515 P2d 920 (1973). "In general, if the facts germane to the determination of probable cause are in dispute, then the case must be decided by a factfinder before the legal determination of probable cause is made." *Perry*, 187 Or App at 578 (citing *Kuhnhausen v. Stadelman*, 174 Or 290, 310-11, 148 P2d 239, 149 P2d 168 (1944).

a.  Subjective belief

■■■ We begin by considering whether there is any evidence that Hammond lacked a subjective belief that the defamation claims were tenable. The record shows that, in January 1995, Hammond reviewed a videotape of the relevant "Water Forum" broadcast and conducted research on the legal issues presented in defamation claims. Hammond then sent Traverso a letter in which she set out specific statements made by plaintiffs during the program, stated what

she characterized as the defamatory "implications" that could be drawn from them, and informed Traverso that she believed that Parker NW had a cause of action against plaintiffs. Hammond testified that, although Traverso previously had told her that he thought the statements were defamatory, that information did not influence her opinion as to whether they were; rather, she drew her own conclusions in that regard.

Hammond testified that, between her conversation with Traverso in February 1995 and the filing of the action in September 1995, she did no further research into the matter because Traverso did not authorize any further work. She testified that, at the time she filed the action, she still had not received any documents from Traverso, but that she "had certain facts" and "knew" that documents existed; she also testified that Traverso did not himself have all of the relevant documents but that those that he did not have may have been in the possession of Parker NW's land use attorney, Parisi, or may have been submitted to the county as evidence in the Goal 5 proceeding.

Hammond testified that she filed the original complaint on September 19, 1995, without conducting further investigation of the matter because she wanted to avoid the running of the statute of limitations and because she assumed that, if necessary, the complaint could be amended. Hammond also testified that, at the time she filed an amended complaint on November 10, 1995, she believed, based on information she had received from Traverso, that statements that had been made by various plaintiffs about the existence of a permit for a dike, about "the Indian skeletons," about a water rights permit, and other statements that formed the predicates of Parker NW's defamation action were false or had been made with reckless disregard for the truth.

Plaintiffs presented no evidence contradicting Hammond's testimony relating to her subjective belief that the defamation action was tenable. They likewise point to no evidence in the record from which it may be inferred that Hammond's account of the reasons for filing, and later withdrawing, the defamation claims are inaccurate. As we have

noted, plaintiffs' principal argument is that, because Hammond ultimately withdrew the defamation complaint, they are entitled to a presumption that she had filed the complaint without probable cause. As discussed above, however, plaintiffs are entitled to no such presumption. Hammond explained the reasons for withdrawing the complaint, and plaintiffs have identified no evidence from which it could be inferred that Hammond is not to be believed. Again, uncontradicted testimony cannot be controverted merely by declaring that it is not true. *Blandino*, 179 Or App at 192. In short, there is evidence in the record that Hammond subjectively believed the defamation claim to be tenable; conversely, there is no evidence that she lacked that belief.

### b.   Objective reasonableness

We turn to whether there is any evidence from which a jury could find facts or draw inferences requiring the legal conclusion that Hammond's subjective belief was not objectively reasonable. As previously noted, Hammond reviewed the videotape of plaintiffs' "Water Forum" statements in January 1995. At that time, Traverso told her that "certain statements" made by plaintiffs were "false and defamatory." Traverso explained, and Hammond understood from his explanation, that plaintiffs Roop, Stevens, and Pointer had been at various Goal 5 hearings and, as a result, knew facts that were relevant to the falsity of their statements, such as facts relating to the existence of a permit for a dike and facts relating to Indian burial artifacts at the site. Also, as noted above, Traverso informed Hammond that he had documents supporting his position that plaintiffs' statements were false; according to Traverso's testimony, he gave Hammond files relating to the "Indian burial issue" and told her that he would provide her with additional information that currently was in Parisi's possession.

On October 24, 1995, Hammond spoke to Parisi about the Goal 5 process and Parisi told her, among other things, that plaintiff Stevens was a "liar." Hammond testified that, as of November 8, 1995, she still had not seen any documentation regarding the facts at issue in plaintiffs' allegedly defamatory statements. Traverso testified that he was not able to meet with Hammond before that time regarding

the lawsuit due to the need to complete paving work during October.

Plaintiffs have not directed us to any evidence in the record that contradicts the foregoing set of facts. Their arguments instead are that, even on those facts, we must conclude that Hammond acted unreasonably as a matter of law.

■ First, plaintiffs contend that Hammond acted unreasonably because she relied on information provided to her by Traverso and Parisi without conducting an independent investigation. Plaintiffs urge us to adopt a hard-and-fast rule that lawyers always are obligated to conduct independent investigations and may not merely rely on the information provided by their clients before filing a complaint. That, however, is not the law in Oregon. As the Supreme Court held in *Lambert v. Sears, Roebuck*, 280 Or 123, 131, 570 P2d 357 (1977), whether an attorney has an obligation to conduct an investigation to verify independently the information provided by a client depends on the facts of each case, specifically, whether the facts create the appearance that the client may not be providing the attorney with all the necessary information. Plaintiffs do not identify any specific facts that would have triggered such an obligation in the defamation action at issue in this case.

Second, plaintiffs argue that Hammond acted unreasonably because the defamation claims themselves were untenable on the merits. Specifically, plaintiffs argue that Hammond neglected to consider that the statements that formed the basis of the defamation claims were constitutionally protected because Parker NW and Traverso were "public figures." As a result, plaintiffs argue, under *New York Times Co. v. Sullivan*, 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964), they would have been immune from liability for defamation in the absence of proof of actual malice. In a similar vein, plaintiffs assert that the defamation claims were untenable because their statements were merely opinions and, in any event, were true.

In asserting those arguments, however, plaintiffs misapprehend the nature of the inquiry, which is not whether they would have prevailed on the merits of the defamation claims but, rather, whether it was reasonable under

the circumstances for Hammond to have asserted them. We addressed that issue in *Erlandson,* in which we explained that less is required of counsel in bringing a civil suit than in initiating a criminal action:

> " 'Sometimes this is expressed by saying that want of probable cause must be "very clearly proven," or "very palpable," or that "greater latitude" must be allowed than in a criminal case. Apparently what is meant is merely that the instigator need not have the same degree of certainty as to the facts, or even the same belief in the soundness of his case, and that he is justified in bringing a civil suit when he reasonably believes that he has a good chance of establishing it to the satisfaction of the court or the jury. He may, for example, reasonably submit a doubtful issue of law, where it is uncertain which view the court will take.' "

45 Or App at 474-75 (quoting William Prosser, *Law of Torts* § 120, 854 (4th ed 1971)); *see also Blandino,* 179 Or App at 190 (same).

In this case, plaintiffs have failed to demonstrate that their defenses to the defamation claims were so irrefutable that Hammond could not reasonably have believed that her clients could have prevailed. For example, plaintiffs' contention that proof of actual malice would have been required depends on the assertion that Parker NW and Traverso in fact were "public figures." The assertion is, at the least, reasonably debatable. Indeed, plaintiffs never explain why Parker NW and Traverso must be regarded as public figures. Apparently, plaintiffs assume that, because Parker NW's proposal to expand its business operations was a matter of public interest, the proposal made the company and its president public figures. In *Bank of Oregon v. Independent News,* 298 Or 434, 443, 693 P2d 35, *cert den,* 474 US 826 (1985), however, the Oregon Supreme Court explained that, "[m]erely opening one's doors to the public, offering stock for public sale, advertising, etc., even if considered a thrusting of one's self into matters of public interest, is not sufficient to establish that a corporation is a public figure."

Similarly, plaintiffs contend that their statements could not plausibly be regarded as defamatory because they were merely opinions, yet they never explain why that is so.

Statements of mere opinion are constitutionally protected, it is true. *See, e.g., Hickey v. Settlemier,* 141 Or App 103, 110, 917 P2d 44, *rev den,* 323 Or 690 (1996). But even opinions may be actionable if they imply the existence of underlying defamatory facts. *Id.* In this case, the statements at issue included, among other things, a statement that Parker NW was attempting to "do further damage to the Clackamas [River]," which supposedly would contaminate the drinking water of some 200,000 nearby residents; that Parker NW had "paid off the Commission and the County"; that Parker NW had previously illegally constructed a dike in the Oxbow area without first getting a permit; that Parker NW's construction operations had disturbed Indian burial sites; and that Parker NW connived to have taxpayers foot the bill for some of its construction operations. Those statements appear to concern matters of historical fact, not mere opinion. At the very least, it is reasonably arguable that they implicate the existence of undisclosed defamatory facts.

We conclude that plaintiffs have failed to identify any evidence that would support the conclusion that Hammond lacked probable cause to believe that the defamation claims that she filed on behalf of Parker NW were at least reasonably tenable. The trial court therefore did not err in granting a directed verdict in favor of Hammond on plaintiffs' wrongful initiation claims.

C. *Denial of Motions for Directed Verdicts Against Parker NW*

1. *The parties' arguments*

In their eleventh through eighteenth assignments of error, plaintiffs Roop, Aspenwall, Pointer, and Sherbourne argue that the trial court should have granted their motions for directed verdicts against Parker NW.[13] In a nutshell, they argue that at trial they affirmatively established, as a matter of law, that Parker NW lacked probable cause to believe that plaintiffs' televised statements were defamatory. Specifically, they argue that there was no evidence in the record that would permit a jury to conclude that Parker NW had

---

[13] In the context of these assignments of error, "plaintiffs" refers only to the specified four plaintiffs.

probable cause to believe that plaintiffs made their statements with actual malice.

Parker NW responds that the trial court properly denied plaintiffs' motions because there was at least a jury question as to whether it had probable cause to believe that it had been defamed. In particular, Parker NW contends that proof of actual malice would not have been required, because it was not a "public figure." At the very least, Parker NW argues, the matter is subject to reasonable dispute. Alternatively, Parker NW argues that, even if it were a "public figure," the record contains ample evidence from which a jury could find that facts supporting the conclusion that Parker NW had probable cause to believe that plaintiffs' statements had been made with actual malice and that those statements caused Parker NW injury. Finally, Parker NW argues that the trial court properly denied plaintiffs' motion for a directed verdict because relying on advice of counsel in filing a defamation claim is sufficient to establish probable cause.

Plaintiffs contest Parker NW's reading of the record, arguing that it is insufficient to establish probable cause to believe that their statements had been made with actual malice. They also argue that Parker NW was not entitled to rely on legal counsel's advice regarding the merits of its defamation claims, because Traverso and Parker NW did not disclose to legal counsel in good faith the facts allegedly supporting Parker NW's claims.

2. *Analysis*

We review the denial of a party's motion for a directed verdict in its favor by considering the evidence, including reasonable inferences, in the light most favorable to the nonmoving party and determining whether the moving party was entitled to a verdict as a matter of law. *Benjamin v. Wal-Mart Stores, Inc.*, 185 Or App 444, 452, 61 P3d 257 (2002), *rev den*, 335 Or 479 (2003) (citing *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984)); *see also* Or Const, Art VII (Amended), § 3; *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 159, 61 P3d 918 (2003) (appellate courts review the denial of a motion for directed verdict for any evidence to support a verdict in the nonmoving party's favor). As pertinent here, that standard requires us to consider whether

there was any evidence from which a reasonable jury could have found facts or drawn inferences sufficient to support a legal conclusion that Parker NW had probable cause to believe that plaintiffs Roop, Aspenwall, Pointer, and Sherbourne had made defamatory statements against it.

In this case, however, we need not address whether the record contains such evidence, because Parker NW's reliance on the advice of counsel is dispositive. In *Erlandson*, we explained that " '[a]dvice of counsel to the effect that there is a reasonable chance that the [underlying] claim will be found valid is enough to establish probable cause.' " 45 Or App at 475 (quoting Prosser, *Law of Torts* § 120 at 854). More recently, we held—citing *Erlandson*—that, in the absence of bad faith, probable cause is established by evidence that a claim had been initiated upon receipt of legal advice that the claim "had a reasonable probability of success." *Blandino*, 179 Or App at 191; *see also Restatement* § 675 comment g (when the underlying proceeding is a civil proceeding, "the advice of counsel is a protection even though it consists merely of an opinion that the facts so known or believed afford a chance, whether great or small, that the claim asserted in the civil proceedings may be upheld").

In this case, it is undisputed that, after viewing a videotape of the "Water Forum" program, Hammond identified to Traverso various statements made by the participants that she believed to be defamatory and to give rise to defamatory "implications." Hammond and Traverso later spoke by telephone about the statements; Traverso told Hammond that he and Parisi possessed documents pertaining to the falsity of plaintiffs' statements. Traverso also testified that, at the time the defamation action was filed, he had a "gut feeling" that plaintiffs' statements had harmed Parker NW's reputation. Ultimately, the identified statements and other related statements formed the basis for the allegations in Parker NW's defamation claims against plaintiffs. Traverso expressly testified that he relied on the advice and opinion of Hammond (as well as those of Wall and Parisi) that plaintiffs' statements gave rise to an action for defamation. Plainly, that evidence supports a finding that Parker NW relied on the advice of counsel.

Plaintiffs nevertheless insist that Parker NW was not entitled to rely on Hammond's advice because it did not do so in good faith. Specifically, plaintiffs assert that Parker NW and its president, Traverso, failed to disclose certain pertinent information to Hammond before she rendered her advice. Parker NW, in turn, replies that it and Traverso were not lawyers and simply did not know what facts would be relevant to what they regarded as the "complicated legal questions involved in determining whether Parker NW had a case."

We need not resolve that dispute. Indeed, the very existence of the dispute over whether Parker NW relied in good faith on its counsel's legal advice demonstrates why the trial court did not err in denying plaintiffs' motion for a directed verdict. As we have noted, to prevail on appeal, plaintiffs must establish that there is no jury question concerning any essential element of their claim, that is, that they are entitled to judgment as a matter of law. *Benjamin*, 185 Or App at 452. We conclude that the trial court did not err in denying plaintiffs' motion for a directed verdict against Parker NW.

## D. *Jury Instructions*

### 1. *The parties' arguments*

In their nineteenth through twenty-second assignments of error, plaintiffs Roop, Aspenwall, Pointer, and Sherbourne argue that, when the relevant facts are not in dispute, whether a defendant in a wrongful initiation action had probable cause to prosecute the underlying action is a question of law for the court. Consequently, plaintiffs argue, the trial court erred in not determining "as a threshold issue" whether any of the facts in evidence in the wrongful initiation proceeding constituted probable cause in regard to any or all of the elements of the defamation claims against plaintiffs and in failing to instruct the jury to resolve those specific facts. In particular, plaintiffs assert that the trial court erred in failing to determine whether any or all of their allegedly defamatory statements constituted nonactionable opinions

and, in regard to those statements that were not mere opinions, whether there were sufficient facts supporting a reasonable belief by Parker NW that the statements were defamatory. According to plaintiffs, the record is "devoid" of those or any other facts supporting a conclusion that Parker NW had probable cause.

In their twenty-third through twenty-sixth assignments of error, plaintiffs argue that, where the jury verdict forms asked only whether Parker NW had probable cause to pursue the defamation action against each plaintiff, the trial court erred in failing to instruct the jury which specific facts constituted probable cause, that is, failed to instruct the jury regarding the legal consequences of its factual determinations.

Parker NW responds that, having failed to request a jury instruction relating to the existence of specific facts supporting probable cause or the lack of same, and having failed to request that the verdict forms include any specific factual interrogatories, plaintiffs failed to preserve their claimed errors relating to the trial court's jury instructions. Alternatively, they argue that, having requested a jury instruction that related to probable cause but which did not contain the matter they now argue should have been included, plaintiffs invited any such error. Parker NW makes no argument on the merits.

### 2. *Analysis*

We begin with preservation. ORCP 59 H provides, in part:

> "[N]o instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception is made immediately after the court instructs the jury. Any point of exception shall be particularly stated and taken down by the reporter or delivered in writing to the judge. It shall be unnecessary to note an exception in court to any other ruling made. All adverse rulings, including failure to give a requested instruction or a requested statement of issues, except those contained in instructions and statements of issues given, shall import an exception in favor of the party against whom the ruling was made."

In *Beall Transport Equipment Co. v. Southern Pacific*, 335 Or 130, 136-41, 60 P3d 530 (2002), the Supreme Court explained that, under the first two sentences of ORCP 59 H, in order to preserve error relating to a trial court's jury instruction, a party must "point out the error to the judge immediately after the judge has instructed the jury, and the party must 'particularly state' the objection and either deliver the objection to the judge in writing or make sure that the reporter takes down the objection." The court also explained that, under the remainder of the rule, a party "need not take those steps to preserve error regarding 'any other ruling made' " and that among the rulings to which a party need not except is a trial court's "failure to give a requested instruction." 335 Or at 137. Thus, where a party has requested a jury instruction, the issue whether the trial court erred in failing to give that instruction is, in effect, automatically preserved for appeal.

In this case, however, the question is whether plaintiffs requested the instruction that the trial court assertedly failed to give. At several points during a colloquy concerning jury instructions and the form of the verdict, plaintiffs proposed that the trial court instruct the jury to the effect that, if defendants reasonably believed (or not) certain specified facts relating to plaintiffs' allegedly defamatory statements, defendants had (or lacked) probable cause to prosecute the defamation action. At no point, however, did plaintiffs state for the record precisely the form or content of that instruction. Nor does the record on appeal contain any written instruction embodying what we understand to be plaintiffs' proposed instruction. *See* UTCR 6.060 (setting out requirements for requested jury instructions; providing in part that all requested jury instructions must be in writing and delivered concurrently to the court and to opposing parties and that original and one copy of requested jury instruction must be submitted to the court). Finally, plaintiffs did not except to the probable cause instruction actually given by the trial court.

We conclude that, under those circumstances, plaintiffs failed to preserve either the issue raised in their nineteenth through twenty-second assignments of error—that the trial court erred in failing to instruct the jury to resolve

specific facts determined by the court to be relevant to probable cause—or the issue raised in their twenty-third through twenty-sixth assignments of error—that the trial court erred in failing to instruct the jury regarding the legal consequences of its specific factual determinations. Those assignments of error fail.

In summary, none of plaintiffs' assignments of error requires reversal of the judgments in Hammond's favor against plaintiffs or in Parker NW's favor against plaintiffs Roop, Aspenwall, Pointer, and Sherbourne. It follows that Parker NW's cross-assignments of error are moot and that the judgments in Parker NW's favor against plaintiffs Roop, Aspenwall, Pointer, and Sherbourne are affirmed.

### III.   ANALYSIS OF ASSIGNMENTS OF ERROR ON CROSS-APPEAL

We turn, finally, to Parker NW's cross-appeal, in which it raises two assignments of error pertaining to the judgment against it in Stevens's favor.

A.   *Jury Instructions*

1.   *The parties' arguments*

As previously described, at the close of trial, Parker NW unsuccessfully requested a jury instruction pertaining to its affirmative defense under *former* ORS 30.895(2). Specifically, Parker NW requested that the trial court instruct the jury to determine whether it had filed its defamation action "having as a purpose (not necessarily the only purpose) the preservation and evaluation of the claim. If you determine that one of the purposes of filing the lawsuit was to preserve and evaluate the claim, then your verdict shall be for" Parker NW. The trial court declined to give that instruction, reasoning that, where *former* ORS 30.895(2) referred to "the" purpose, it meant *the only* purpose and the instruction therefore did not accurately reflect the statute.

Parker NW now argues that the trial court erred in failing to deliver the requested instruction. It contends that, even considering the statute's use of the definite article "the" before the noun "purpose," the text of *former* ORS 30.895(2), by its terms, does not disclose the legislature's intent. It

therefore urges us to consider the statute's legislative history, including the fact that it was adopted as part of a 1987 bill that also amended ORCP 17, providing for sanctions against an attorney or party who files an action for an improper purpose or without a basis in law or fact. According to Parker NW, that history suggests that *former* ORS 30.895(2) cannot properly be interpreted to apply only when preserving and evaluating a claim is the *sole* purpose for filing an action because, in that circumstance, the action is not also being filed to secure the proper adjudication of a claim and its filing therefore exposes the attorney or party filing it to sanctions under ORCP 17.

Apparently in the alternative, Parker NW contends that *former* ORS 30.895(2) properly should be understood as a "limited exception to the certification requirements," allowing the filing of an action that "may or may not have merit" and affording the party or attorney time to evaluate its merit. Relying on *Hagan v. Gemstate Manufacturing, Inc.*, 328 Or 535, 982 P2d 1108 (1999), Parker NW further asserts that, because the meaning of the statute is not clear and because, properly construed, the statutory defense was available to it even if it did not file its defamation action for the *sole* purpose of preserving and evaluating that claim, the trial court was obligated to give its instruction informing the jury of that meaning and application.

Stevens responds that the trial correctly understood the phrase "the purpose" to mean the sole purpose and that it therefore did not err in refusing to give Parker NW's requested instruction.

2. *Analysis*

A litigant is entitled to jury instructions on his or her theory of the case if the instructions correctly state the law and are based on the pleadings and proof. *See, e.g., Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 703, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472 (2003). There is no error, however, if the requested instruction is not correct in all respects; if, although the requested instruction is correct, its substance was covered fully by other instructions; or if the requested instruction is not necessary in order to explain the particular issue or point of law to the

jury. *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998). Error in failing to give a requested instruction requires reversal only if the jury instructions given by the trial court, considered as a whole, caused prejudice to the party requesting the instruction. *Id.*; *Beall Transport Equipment Co.*, 186 Or App at 703.

In this case, the parties do not dispute that Parker NW properly pleaded the affirmative defense provided in *former* ORS 30.895(2) or that the temporal predicates for invocation of the defense were met; accordingly, Parker NW's requested jury instruction was based on the pleadings and evidence in the case. The question remains whether it was a correct statement of the law and, even if it was, whether it was "necessary in order to explain the particular issue or point of law to the jury." *Hernandez*, 327 Or at 106. We begin with the former inquiry. Specifically, we inquire whether, as advocated by Parker NW in its jury instruction, the phrase "for the purpose of preserving and evaluating the claim" means one of several possible purposes.

As Parker NW recognizes, as a common usage, the definite article "the" is "used as a function word before a noun to limit [the noun's] application to that specified by a succeeding element in the sentence." *Webster's Third New Int'l Dictionary* 2368-69 (unabridged ed 1993). Applying that usage to *former* ORS 30.895(2), the article "the" functions to limit the noun "purpose" to the specified purpose of "preserving and evaluating the claim." In other words, the use of the definite article suggests that the phrase "for the purpose of preserving and evaluating the claim" properly is construed as meaning, in effect, the only purpose. Reinforcing that conclusion is the fact that the noun "purpose" is singular.

As we have noted, Parker NW insists that, considered in context with the provisions of ORCP 17—establishing liability for sanctions for false certifications of pleadings— *former* ORS 30.895(2) cannot plausibly be understood to mean *only* "the purpose of preserving and evaluating the claim" because, if that is an attorney's or party's only purpose, he or she is subject to sanctions under the contextual rule. However, as Parker NW itself recognizes, reading *former* ORS 30.895(2) and ORCP 17 C together, the former

plausibly can be considered an exception to the latter, that is, an exemption from liability for sanctions. Thus, even reading *former* ORS 30.895(2) as referring to the *sole* purpose of preserving and evaluating a claim, it nevertheless can be read in harmony with ORCP 17 C.

Also as noted, Parker NW relies on *Hagan* for the proposition that, if the meaning of a statute is not clear on its face, the court must declare its meaning to the jury. However, we have determined above that the meaning of *former* ORS 30.895(2) is, indeed, clear from its text and context. Thus, *Hagan* does not assist Parker NW.

In sum, *former* ORS 30.895(2) is properly understood as referring to the single purpose of preserving and evaluating a claim. Accordingly, Parker's requested jury instruction was not a correct statement of the law. We therefore need not consider whether the instruction was necessary or whether its subject matter was, instead, fully covered by the instructions given. The trial court did not err in declining to give Parker's requested jury instruction pertaining to *former* ORS 30.895(2).

B.  *Exclusion of Evidence of Prior Pleading*

1.  *The parties' arguments*

In its final assignment of error on cross-appeal, Parker NW argues that the trial court erred in granting Stevens's motion to exclude evidence of the amount of non-economic damages sought by her in her original complaint, that is, before the trial court struck plaintiffs' claims for punitive damages.[14] As previously stated, the trial court excluded the evidence on the ground that it would be "unfair" to admit the evidence "in a vacuum"—that is, in the absence of an explanation that plaintiffs amended the amount of their claim for noneconomic damages in response to defendants' successful motion to strike their claim for punitive damages

---

[14] In their own words, plaintiffs moved to "[p]reclude any reference to amount prayed for or changes in plaintiffs' prayers." Stevens originally sought $100,000 in noneconomic damages from Parker NW and the same amount from Traverso. After the trial court struck plaintiffs' claims for punitive damages and granted plaintiffs' motion for leave to file their second amended complaint, those amounts were increased to $8,000,000 and $1,500,000, respectively. The jury awarded Stevens $200,000.

and in the context of the trial court's exclusion of any reference to that claim.

On appeal, Parker NW contends that, consistently with *Yates v. Large*, 284 Or 217, 585 P2d 697 (1978), because a superseded pleading ordinarily is admissible as an evidentiary admission, the evidence excluded in this case was relevant for the purpose of challenging plaintiffs' credibility as to the amount of their damages. Stevens responds that, even assuming that the evidence was relevant to the extent of her damages, the trial court permissibly exercised its discretion under OEC 403[15] to exclude it because plaintiffs would have been entitled to explain the circumstances surrounding the increase, including the trial court's earlier ruling striking the punitive damages claims, and—considering that there were five plaintiffs and multiple defamation claims against each— those explanations would have been confusing to the jury and would have unreasonably added to the length of the trial.

Parker NW replies that, consistently with *MacDonald v. Cottle*, 133 Or App 35, 39, 889 P2d 1320, *rev den*, 321 Or 268 (1995), although a trial court has discretion to confine a party's cross-examination within reasonable limits, it lacks discretion to exclude altogether questions and answers directly challenging the disinterestedness or credibility of a witness's testimony. Parker NW reiterates that, in this case, questions regarding plaintiffs' earlier prayers for damages would have directly reflected on plaintiffs' credibility and their "motive" for pursuing the wrongful initiation action.

### 2. *Analysis*

"[W]here a complainant's pleading is subsequently abandoned or superseded, the original pleading is admissible as an evidentiary admission to refute or impeach the present pleading or testimony of the complainant, subject to the right of the complainant to explain any inconsistency." *Swanson v. Hale*, 273 Or 138, 142, 539 P2d 1073 (1975); *see also Moore v.*

---

[15] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

*Drennan*, 269 Or 189, 193, 523 P2d 1250 (1974) (where the statements of fact in the plaintiff's prior pleadings were not consistent with the plaintiff's pleadings and testimony at trial, the prior pleadings were admissible in evidence and the plaintiff could introduce evidence to explain them); *MacDonald*, 133 Or App at 38-39 (it was error to exclude evidence of the defendant's original, and subsequently amended, admission that he did not give the plaintiff antibiotics before extracting her tooth; that evidence "directly challenged [the defendant's] credibility" on a material fact in issue); *Southern Oregon Production Credit Assn v. Patridge*, 71 Or App 53, 56, 691 P2d 135 (1984) (superseded answer was not a binding judicial admission, but constituted evidence from which inferences could be drawn); Laird C. Kirkpatrick, *Oregon Evidence* § 801.03[4][d], Art VIII-33-34 (4th ed 2002).

Whether the disputed evidence was relevant is a question of law for this court; we review for an abuse of discretion the trial court's decision regarding whether relevant evidence should nevertheless be excluded, under OEC 403, on the ground of undue prejudice, confusion of the issues, misleading the jury, undue delay, or the needless presentation of cumulative evidence. *See State v. Fanus*, 336 Or 63, 88-90, 79 P3d 847 (2003), *cert den*, ____ US ____ , 124 S Ct 2416 (2004); *Waddill v. Anchor Hocking, Inc.*, 175 Or App 294, 299, 27 P3d 1092 (2001), *rev den*, 334 Or 260 (2002), *vac'd and rem'd on other grounds*, 538 US 974 , 123 S Ct 1781, 155 L Ed 2d 662 (2003); *cf. McWilliams v. Szymanski*, 101 Or App 617, 792 P2d 457, *rev den*, 310 Or 281 (1990) (considering whether admission in current proceeding of complaints filed in previous proceeding was abuse of discretion under OEC 403).

We conclude that, even assuming that evidence of plaintiffs' superseded pleadings was relevant to the issue of the amount of their noneconomic damages, the trial court did not abuse its discretion in excluding the evidence. As described above, the trial court had granted defendants' motion to strike plaintiffs' claim for punitive damages and, without opposition from defendants, had granted plaintiffs' motion to exclude any reference to punitive damages. The court concluded that, under those circumstances, it was not

"reasonable" or "appropriate" to admit evidence that plaintiffs had increased the amount of their alleged noneconomic damages. Again, the court stated that "to say that the Plaintiffs must have undervalued or overvalued their [noneconomic] damage claim precipitously, without there being any explanation of the context in which that happened, for the purpose of showing this jury that the damages are not in fact significant, I think is unfair in a vacuum." In short, the trial court properly weighed the prejudicial effect of the evidence and permissibly concluded that that effect substantially outweighed its probative value. *See McCathern v. Toyota Motor Corp.*, 332 Or 59, 71-72, 23 P3d 320 (2001) (trial court did not abuse its discretion in admitting evidence; court complied with OEC 403 by balancing the "cost in terms of prejudice of the evidence against its benefits"). There was no error.

Affirmed on appeal and on cross-appeal.