Argued and submitted May 17, 2006, at Eastern Oregon University, La Grande; reversed and remanded May 30, 2007

## Nedo ZNAOR
*Appellant,*

*v.*

## FORD MOTOR COMPANY
and Suburban Ford, Inc.,
*Respondents.*

0309-09882; A127505

159 P3d 1252

Bernard Jolles argued the cause for appellant. With him on the briefs were Candice A. Rutter and Jolles & Bernstein, P.C.

Michael T. Garone argued the cause for respondents. With him on the brief was Schwabe, Williamson & Wyatt, P.C.

Before Edmonds, Presiding Judge, and Ortega, Judge, and Mendiguren, Judge pro tempore.

ORTEGA, J.

**ORTEGA, J.**

■       In this products liability action arising from a failed seatbelt, plaintiff appeals a judgment directing a verdict in favor of defendants Ford Motor Company and Suburban Ford, Inc., and dismissing plaintiff's complaint. In reviewing the grant of a defendant's motion for a directed verdict, we review the evidence, including permissible inferences based on the evidence, in the light most favorable to the plaintiff, and affirm only if there is a complete absence of proof as to an essential issue. *Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 237, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005). We conclude that plaintiff presented sufficient evidence from which a jury could find that the seatbelt's failure to perform properly was due to a manufacturing defect. Accordingly, we reverse the judgment and remand for further proceedings.

The accident at issue occurred four and one-half years after plaintiff purchased a new Ford Ranger pickup. Plaintiff was driving the pickup when traffic in front of him stopped suddenly, requiring him to brake in response. Although he was wearing his seatbelt, it came unbuckled, and his body was thrown forward. His head hit the windshield, and his right shoulder was injured. As of about two years after the accident, the pickup had approximately 60,000 to 70,000 miles on it.

Plaintiff sued Ford Motor Company and the dealer that sold him the pickup, asserting that they were strictly liable for the injuries that he sustained when his seatbelt failed. Plaintiff alleged, among other things:

"The * * * Ford Ranger was unreasonably dangerous and defectively manufactured at the time it left defendants' hands, in that

"a.   The manufacturing process caused or created a fatigue crack in the spring on the seat belt assembly causing it to fail and break when being put to its normal and intended use."

At trial, plaintiff presented expert testimony from an engineer, Biskey, who opined that the spring in the seatbelt assembly failed as a result of a manufacturing defect. He testified that a small leaf spring holds the latch assembly

together and makes it work. That spring developed fatigue cracks that grew until "the spring no longer provided * * * the springiness that was necessary to fulfill its function." Biskey opined that the fatigue cracks were caused in the manufacturing process because some "variable"—likely the metal that was used—reduced the spring's resistance to cracking and made it unable to "withstand the stress that was normally applied to it." Although any spring will break if flexed enough times, Biskey noted that the spring here cracked much earlier than would be expected.

In forming his opinion, Biskey relied on documents provided by defendants. Among those documents were the results from tests performed on a sample of seatbelt assemblies of the type used on plaintiff's pickup. Those tests involved, among other things, pulling the belt in and out of the retractor 40,000 to 50,000 times to determine whether it would continue to work. The results demonstrated that the latch assembly met federal seatbelt safety standards. During cross-examination, Biskey conceded that he had not seen the manufacturer's specifications for the spring.

Biskey also examined the seatbelt assembly and the inside of plaintiff's pickup for evidence of abnormal wear or use. He testified that the interior of the truck did not show heavy use, that the seatbelt webbing was not frayed, and that, "[i]f one were looking for a used car, it would be in pretty good condition in my experience."

At the conclusion of Biskey's testimony and after plaintiff rested, defendants moved for a directed verdict. Defendants contended that, to make out a manufacturing defect claim, plaintiff had to introduce evidence of the manufacturer's specifications for the product and demonstrate a deviation from those specifications. Defendants argued that plaintiff's expert did not base his opinion that a manufacturing defect was present on an analysis of the product in light of the manufacturer's specifications or of other similar products made by that manufacturer, but rather on the mere presence of fatigue cracks in the spring. The trial court agreed, noting that Biskey did not "know how properly [the spring] was manufactured or not because he has no specifications to compare it to. He was giving an opinion just in the abstract.

That's not what the jury can rely on." The court granted defendants' motion for a directed verdict and entered judgment for defendants.

■       On appeal, plaintiff contends that he submitted evidence sufficient to enable a jury to find that the seatbelt failed due to a manufacturing defect. Although defendants concede that plaintiff's expert testified that the fatigue cracks were due to a manufacturing defect and defendants do not appear to dispute, on this appeal, that fatigue cracks in the spring caused the seatbelt to fail, defendants nevertheless contend that Biskey's testimony was insufficient to support a jury finding of a manufacturing defect. On review of the evidence, we conclude that plaintiff presented sufficient evidence to support his manufacturing defect theory and accordingly reverse.

Plaintiff's evidence of a manufacturing defect consisted of Biskey's opinion testimony that the manufacturing process caused the latch spring to develop fatigue cracks and to fail prematurely. Defendants contend, however, that Biskey's opinion is based on mere speculation. Biskey admitted that he had not reviewed the design specifications for the seatbelt assembly and therefore could not say definitely whether the latch spring met those specifications. According to defendants, that concession is fatal. Defendants rely on *Phillips v. Kimwood Machine Co.*, 269 Or 485, 525 P2d 1033 (1974), for the proposition that, in order to prove a manufacturing defect, plaintiff was required to introduce evidence that the product failed to meet its design specifications or differed from other similar products by the same manufacturer.

*Phillips*, however, does not stand for the proposition that defendants offer. *Phillips* was a defective design case, in which the court noted the relative difficulties of proving defective design and defective manufacture. The court observed that a manufacturing defect is relatively easy to prove because the product "is capable of being compared with similar articles made by the same manufacturer." 269 Or at 491. By contrast, the court noted, to prove that a product is defectively *designed* and is unreasonably dangerous as a result—the question at issue in *Phillips*—"is not so easy." *Id.* at 494. The court explained:

"The question of whether the design is unreasonably dangerous can be determined only by taking into consideration the surrounding circumstances and knowledge at the time the article was sold, and determining therefrom whether a reasonably prudent manufacturer would have so designed and sold the article in question had he known of the risk involved which injured plaintiff."

*Id.* The court discussed manufacturing defects only in that context. In doing so, it did not articulate, as defendants posit, a rule of law that an analysis of design specifications or a comparison of similar products is essential to a manufacturing defect claim.

Even assuming, however, that defendants' legal premise were valid, plaintiff's expert did compare plaintiff's seatbelt assembly to other similar assemblies through the test results from a sample of seatbelt assemblies. The information that he gleaned from the comparison enabled him rationally to deduce that plaintiff's seatbelt failed prematurely because of a manufacturing defect.

It can be inferred from the test results from the sample that those seatbelt assemblies could withstand 40,000 to 50,000 uses without failing. From this, plaintiff's expert reasonably could deduce that the seatbelt assemblies, when properly manufactured, would in fact withstand at least that number of uses without failing. Because plaintiff's seatbelt assembly was similar to those in the test sample, Biskey reasonably could deduce that plaintiff's assembly—including the latch spring, which was essential to its proper functioning—likewise would have withstood at least that number of uses without failing had it been properly manufactured.

Biskey observed, however, that the latch spring in plaintiff's seatbelt assembly "prematurely" failed due to fatigue cracks in the spring. Evidently, the failure was "premature" because it occurred before the spring had been subjected to 40,000 to 50,000 uses. That inference is reasonable based on Biskey's observations of the age and condition of the pickup, as well as the seatbelt itself.[1]

---

[1] Defendants do not argue on appeal that plaintiff failed to prove that the seatbelt was "unreasonably dangerous." Thus, the only question before us is whether

The foregoing inferences support Biskey's opinion that the latch spring in the seatbelt assembly in plaintiff's pickup failed as a result of a manufacturing defect. Defendants' contention that Biskey's opinion is based only on speculation is therefore incorrect, and defendants were not entitled to a directed verdict.

Reversed and remanded.

---

there is evidence that, because of a manufacturing defect, the seatbelt failed earlier than it otherwise would have.